[Civil No. 772. Filed March 19, 1902.]

[68 Pac. 550.]

# ARIZONA AND NEW MEXICO RAILWAY COMPANY, Defendant and Appellant, v. ROBERT NEVITT, Plaintiff and Appellee.

1. RAILROADS—INJURIES TO PERSONS ON TRACK—EVIDENCE—NEGLIGENCE —CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR THE JURY.—Plaintiff and other employees of a reduction works had been accustomed for many years to go along the tracks in the yard of the defendant company. It was not shown that the defendant had given any consent to this use of its right of way, except such implied consent as might be inferred from its suffering this use to be made without objection. Plaintiff, entering upon defendant's right of way, walked along between the tracks passing a switch, where, standing immediately over the frog, was an engine, with one car coupled in front and two behind. When about one hundred and fifty feet north of the engine and cars, plaintiff glanced back and saw that they were standing still. After he had proceeded about one hundred and fifty feet farther, he was knocked down by the car attached to the rear of the engine, while the engine was making what is known as a "flying switch." The wind at the time was blowing from the power-house of the reduction works, and plaintiff stated that he heard no bell and did not notice the noise of an approaching train, but distinctly remembered hearing the noise from the gas-engine at the reduction works. Defendant's rules prohibited the use of the flying switch when it was possible to avoid it, and when it was necessary to use it great caution was required. Making a flying switch requires a very rapid movement of the engine. Plaintiff was an old railroad man, and familiar with the method of making the flying switch. After these facts had been proved, defendant moved to instruct the jury to bring in a verdict for defendant, which motion was overruled. *Held,* that regardless of the question as to whether plaintiff was upon the right of way as a licensee or a mere trespasser, the questions of defendant's negligence and of plaintiff's contributory negligence were both for the jury.

2. APPEAL AND ERROR—CROSS-APPEAL—ASSIGNMENT OF CROSS-ERROR NECESSARY.—Objections by appellee cannot be considered without an assignment of cross-error unless the error complained of appears upon the face of the record.

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Graham. F. M. Doan, Judge. Affirmed.

The facts are stated in the opinion.

M. J. Egan, and Kibbey & Edwards, for Appellant.

From the standpoint of the appellee, he was only a licensee; and when he entered upon the right of way of this company to walk along its tracks and right of way he took upon himself all the hazards and perils incident to his intrusion thereon. The railroad company had a right to shift its cars from one track to the other in the ordinary operation of its business, and was not bound to modify, delay, postpone, or otherwise change its usual methods for the mere convenience of any one who took upon himself the hazard of walking down those tracks. *Egan* v. *Montana Central Ry. Co.*, 24 Mont. 569, 63 Pac. 831.

No duty was imposed by law on the defendant any other or greater than they would have owed to a naked trespasser. *Sweeney* v. *Railroad Co.*, 10 Allen, 368, 87 Am. Dec. 644; *Richards* v. *Chicago Railway Co.*, 81 Iowa, 426, 47 N. W. 63; *Weldon* v. *Philadelphia Railway Co.*, 2 Pen. (Del.) 1, 43 Atl. 156; *Settoon* v. *Texas and P. Ry. Co.*, 48 La. Ann. 807, 19 South. 759.

The following cases hold that owners of private property are not required to provide against danger of accident, but of course could not wantonly injure any one: *Sweeney* v. *Old Colony R. R. Co.*, 10 Allen, 373, 87 Am. Dec. 644; *Hickey* v. *Boston L. and R. Co.*, 14 Allen, 429; *Philadelphia etc. R. R. Co.* v. *Hummell*, 44 Pa. St. 375, 84 Am. Dec. 457; *Gillis* v. *Pennsylvania R. Co.*, 59 Pa. St. 129, 98 Am. Dec. 317; *Finlayson* v. *Chicago B. and Q. R. Co.*, 1 Dill. 579, Fed. Cas. No. 4793.

A railroad company is bound to exercise proper care to avoid striking a trespasser on its track *after its servants know such trespasser is in danger,* but the company is not bound to keep a lookout for the benefit of trespassers. *Scheffler* v. *Railroad Co.*, 32 Minn. 518, 21 N. W. 711; *Planz* v. *Boston and A. R. Co.*, 157 Mass. 377, 32 N. E. 356; *Brown* v. *Lynn*, 31 Pa. St. 510, 72 Am. Dec. 768; *Isbell* v. *New York etc. R. R. Co.*, 27 Conn. 393, 71 Am. Dec. 78; *Baltimore Traction Co.* v. *Wallace*, 77 Md. 435, 26 Atl. 518; *Louisville etc. R. R. Co.* v. *Kellum's Admx.*, 14 Ky. Law Rep. 734, 21 S. W. 230; *Curry* v. *Chicago etc. R. R. Co.*, 43 Wis. 665; *Hepfel* v. *St. Paul etc. Ry.*, 49 Minn. 263, 51 N. W. 1049; *Haden*

v. *Sioux City etc. R. R. Co.,* 92 Iowa, 226, 60 N. W. 537.

Edwards & McFarland, for Appellee.

When the community for years had been accustomed to use this right of way as a foot-path without objection, the railroad company is chargeable with notice of such usage; at least, its consent is clearly inferable. In such cases there arises on the part of the railroad company a duty to use all reasonable care and diligence to prevent injury to persons who are likely to be on its right of way. *Hansen v. Southern Pacific Co.,* 105 Cal. 379, 38 Pac. 957; *Cahill v. Chicago etc. Ry. Co.,* 74 Fed. 285, 20 C. C. A. 184; *Roth v. Union Depot Co.,* 13 Wash. 525, 43 Pac. 641, 44 Pac. 253, 31 L. R. A. 855; *Young v. Clark,* 16 Utah, 42, 50 Pac. 832; *Barry v. New York Cent. etc. R. R. Co.,* 92 N. Y. 289, 44 Am. Rep. 377; *Byrne v. New York Cent. etc. R. R. Co.,* 104 N. Y. 362, 58 Am. Rep. 512, 10 N. E. 539; *Whalen v. Chicago etc. Ry. Co.,* 75 Wis. 654; *Johnson v. Lake Superior etc. Co.,* 86 Wis. 64, 56 N. W. 161; *Connell v. Chesapeake O. Ry. Co.,* 22 Ky. Law Rep. 501, 58 S. W. 374; *Tutt v. Illinois Cent. Ry. Co.,* 104 Fed. 741, 44 C. C. A. 320.

The testimony showed that the approaching cars had no brakeman upon them; that no warnings were given; that no means were taken to avoid collisions with persons who might be expected to be found upon the tracks or right of way of the appellant. Under such circumstances, it was proper for the jury to determine whether such management was negligence. *Mt. Adams etc. Ry. Co. v. Lowery,* 74 Fed. 463, 20 C. C. A. 596; *Travelers' Ins. Co. v. Randolph,* 78 Fed. 754, 24 C. C. A. 305; *Thompson v. Northern Pacific Ry. Co.,* 93 Fed. 384, 35 C. C. A. 357; *Richardson v. Swift & Co.,* 96 Fed. 699, 37 C. C. A. 557; *Tutt v. Illinois Cent. Ry. Co.,* 104 Fed. 741, 44 C. C. A. 320; *S. C. and Pac. Ry. Co. v. Stout,* 84 U. S. 657, 21 L. Ed. 745; *Phœnix Mutual Life Ins. Co. v. Doster,* 106 U. S. 30, 1 Sup. Ct. 18, 27 L. Ed. 65; *Jones v. East Tennessee etc. Ry. Co.,* 128 U. S. 443, 9 Sup. Ct. 118, 32 L. Ed. 478; *Chicago B. and Q. R. R. Co. v. Gunderson,* 174 Ill. 495, 51 N. E. 708.

SLOAN, J.—Robert Nevitt, the appellee herein, brought

suit in the district court of Graham County against the Arizona and New Mexico Railway Company, a corporation, appellant herein, to recover damages for personal injuries alleged to have been received by him by being struck and knocked down by a train belonging to and being operated by said railway company while he (appellee) was walking between two tracks upon appellant's right of way. It is charged in the complaint that the employees of appellant wantonly, recklessly, and willfully, and without giving appellee any warning whatever of the approach of said train, and while making what is commonly known as a "flying switch," ran him down, and inflicted the injuries complained of. It is shown by the record that at the October, 1900, term of court a trial of the action was had, and a verdict and judgment rendered against the appellant in the sum of fifteen thousand dollars. A motion for a new trial was made by appellant, which was granted. Upon the new trial of the action, after the appellee had introduced his evidence, the appellant moved the court to instruct the jury to return a verdict for it, which motion was by the court overruled. The case then went to the jury under the instructions of the court, without the introduction of any evidence on the part of the appellant. The jury rendered a verdict against the appellant in the sum of three thousand dollars, and judgment was thereupon entered thereon. Appellant moved the court for a new trial, which motion was denied, whereupon this appeal was taken.

Three assignments of error are alleged by appellant. Counsel for appellant, in their brief, chose to discuss questions raised by these several assignments under the one assignment that the court erred in refusing to instruct the jury to return verdict for appellant. The material facts put in evidence by the appellee are substantially as follows: The appellant owns and operates a narrow-gauge railroad from the town of Lordsburg, in New Mexico, to and beyond the town of Clifton, in the county of Graham, in this territory. It was in the town of Clifton that the accident occurred, and near the company's depot building, and within the railroad yards at that place. At the time of the accident, which was in the early morning, the plaintiff was going from his house in the southern portion of the town of Clifton, in a northerly direc-

tion, to the reduction works of the Arizona Copper Company, where he was employed. It was shown that, while there was a public highway leading from the part of the town where appellee lived to said reduction works, for many years it was the custom of the appellee and other employees of said reduction works to go up and down, along, over, and across the tracks in the said yard and right of way of the railroad company. It was not shown that the railroad company had given any consent to this use of its right of way and tracks, except such implied consent as might be inferred from their suffering this use to be made of the same without objection. The appellee testified that he entered upon the right of way of the railroad company at a point about one hundred and sixty feet south of the depot, and proceeded in a northerly direction between two of the tracks of the yard designated as "Track No. 2" and "Track No. 3." The distance between these two tracks, measured between the rails, was about seven feet. He stated that as he approached the depot he passed to the right of the frog that connected track No. 2 and track No. 3. Standing immediately over the frog was an engine, headed south, with one car coupled on the front and two behind. The engine was at the time standing still, almost directly over the frog which connected track No. 3 and track No. 2. After passing the engine, he proceeded along the footpath between the two tracks on his way north. The wind at the time was blowing from the direction of the power-house of the reduction works. On the main track, and in front of the depot, a train was then standing, which was due to leave for Lordsburg at that hour. Appellee was walking, as he states, at a rapid pace. After he had passed the engine a distance of one hundred feet, he met a Mr. Schumann, and passed to the right of him, and continued to walk between tracks 2 and 3. He stated that as he passed the depot he saw a number of people passing in and out. Shortly afterwards he lost consciousness. He stated that before losing consciousness he remembered that he had reached a distance of about three hundred or four hundred feet from where he saw the engine standing; that he had, when he reached the point where the highway crossed the track, which was about one hundred and fifty feet north of the engine, glanced back to see if the engine was moving, and found that it was standing

still. He thought at the time he lost consciousness he was walking nearer track No. 3 than track No. 2, but was in the pathway between the two tracks. He stated that he heard no bell, and did not notice the noise of an approaching train but did distinctly remember hearing the noise from the gas-engines at the reduction works. The wind was coming from that direction. He also stated that his thoughts at the time of the accident were upon his work. It was shown that the appellee was injured by being knocked down by the car in the rear of the engine which was standing on the frog at the junction of the two tracks when he passed it on his way to the reduction works, while the engine was making what is known as a "flying switch" on the spur. It was also shown that there is a rule of the railroad company which prohibited the use of the flying switch when it was possible to avoid it, and then only with caution. It was shown, however, that the trainmen did not strictly observe this rule. It was also shown that the operation of making a flying switch was one which necessitated the rapid movement of the engine. Upon cross-examination appellee testified that he was an old railroad-man, and familiar with the process of making up trains in the railroad yards and the method of making the flying switch. A number of witnesses testified to the extensive and continued use of the footpath by the public between tracks 2 and 3, as well as other parts of the right of way between the town of Clifton and the reduction works. Except the evidence as to the nature and extent of the injuries received by appellee, the foregoing constitutes substantially the facts put in evidence.

It is urged that the court should have granted the motion of appellant, made at the conclusion of the testimony put in by appellee, and should have instructed the jury to return a verdict for it, because the evidence failed to establish negligence on the part of the railroad company or its employees which made it liable, and because the testimony affirmatively showed that the appellee contributed to his injury through his own negligence and want of care. Counsel for both sides have discussed the question in their briefs as to whether appellee, in going upon appellant's right of way, was a licensee or a naked trespasser. So far as the motion is concerned, we do not think the question whether appellee was

one or the other is controlling. The railroad company owed a duty in either case; not so great, perhaps, in case the appellee was a naked trespasser, as it owed in case he was a licensee by implied consent. In the case of *Egan* v. *Railroad Co.,* 24 Mont. 569, 63 Pac. 831, relied upon by appellant, the duty which a railroad company owes to a trespasser upon its right of way is stated in the following language: "The defendants owed to the plaintiff, as they did to any other trespasser, the duty to refrain from any willful or wanton act occasioning injury, and the duty to exercise reasonable care to avoid injuring him after becoming aware of his presence on the right of way; but further than this the defendants were under no obligation to the plaintiff." The rule stated in this case, while applicable to ordinary cases of trespassers upon the right of way, does not commend itself as a correct statement of the universal rule applicable to such. Even in the case of trespassers, where a railroad company has knowledge that its right of way is being trespassed upon to such an extent as to make it likely that, without reasonable care on its part in the movement of its trains, the lives of such trespassers may be taken, we think in such a case the railroad company should be held to the exercise of reasonable care, whether they have actual notice of the presence of such trespassers on the track or right of way or not. Human life is of more consequence than the mere convenience of a railroad company in the management and operation of its trains. Where, therefore, a railroad company has good reason to suspect that persons, whether licensees or trespassers, may be in danger from the running of its trains, or the use of its cars or engines in its yards, we hold that some degree of care must be taken to avoid such injuries. The degree of care must depend upon the extent of the danger known to the company. In other words, it does not seem to us to be a question of actual knowledge in any particular case. The liability of the railroad company does not depend, even in the case of a trespasser, upon its actual knowledge that such trespasser is in danger, but whether it has actual knowledge that without care life may be endangered. There can be no doubt, from the testimony in this case, that the railroad company did have actual knowledge of the use of its right of way at the place where appellee was injured, during all hours

of the day and night, by the employees of the reduction works and others; and we think the court properly left to the jury to decide whether the making of the flying switch in the manner as disclosed by the testimony was an act of negligence for which the company was liable.

Upon the question as to whether the court should have withdrawn the case from the jury upon the ground that the facts showed contributory negligence on the part of appellee, we are not able to say, as a matter of law, that, under the circumstances as testified to by him, he failed to exercise that ordinary care which an ordinarily prudent man would have exercised under like circumstances. As was said in *Railroad Co.* v. *Stout,* 17 Wall. 663, 21 L. Ed. 749: "It is true in many cases that, where the facts are undisputed, the effect of them is for the judgment of the court, and not for the decision of the jury. This is true in that class of cases where the existence of such facts come in question, rather than where deductions or inferences are to be made from the facts. . . . In some cases, too, the necessary inference from the proof is so certain that it may be ruled as a question of law. . . . But these are extreme cases. The range between them is almost infinite in variety and extent. It is in relation to these intermediate cases that the opposite rule prevails. Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed. Another man, equally sensible and equally impartial, would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. . . . It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge." Again, in *Railroad Co.* v. *Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, it is said: "As the question of negligence on the part of the defendant was one of fact for the jury to determine under all the circumstances of the case and under proper instructions from the court, so, also, the question of whether there was

negligence in the deceased, which was the approximate cause of the injury, was likewise a question of fact for the jury to determine under like rules. The determination of what is such contributory negligence on the part of the deceased as would defeat this action, or, perhaps, more accurately speaking, the question as to whether deceased at the time of the fatal accident was, under all the circumstances of the case, in the exercise of such due care and diligence as would be expected of a reasonably prudent and careful person under similar circumstances, was no more a question of law for the court than was the question of negligence on the part of the defendant. There is no more of an absolute standard of ordinary care and diligence in the one instance than in the other.'' This court, in the case of *Hobson* v. *Railroad Co.*, 2 Ariz. 171, 11 Pac. 545, held, in a case where the undisputed facts tending to establish contributory negligence on the part of the plaintiff were much stronger than in this case, that the question was one for the jury, and not for the court. From a consideration of the facts in reference to the conduct of the appellee at the time of the accident as disclosed by his testimony, we are not able to say as a matter of law that he was guilty of such contributory negligence as to have warranted the court in taking the case from the jury.

Counsel for appellee, in their brief, have argued that the judgment appealed from was without jurisdiction for the reason that the former judgment rendered in this case is in full force and effect, because the order of the trial court granting the motion for a new trial fixed terms which were not complied with by appellant. They have argued that question without assigning cross-error. Whether, under our statutes, an appellee may have an adverse ruling of the trial court reviewed without taking a cross-appeal (which we do not decide), it is certain that under the statute this court can only review such ruling when properly assigned as error, unless the error complained of should appear upon the face of the record. The question whether the terms of the court's order were complied with and the order became effective is certainly not one presented upon the face of the record. The want of a proper assignment of cross-error disposes of this question; but, even were the question before us on such an assignment of cross-error, the reasons given in the brief of

appellee do not establish that the judgment before us is without jurisdiction.

The judgment is affirmed.

Street, C. J., and Davis, J., concur.