[Civil No. 1075.   Filed March 20, 1909.]

[100 Pac. 801.]

LIZZIE B. MURPHEY and WALTER E. MURPHEY, Plaintiffs and Appellants, v. JOSEPH BROWN, W. P. SIMS and B. FRIEDMAN, Defendants and Appellees.

1. LIENS—REMEDIAL STATUTES—CONSTRUCTION.—A statute creating a lien is remedial in its nature, and must be construed so liberally as to effectuate its palpable purpose, but the court cannot extend it beyond its expressed terms.

2. LANDLORD AND TENANT—LIEN FOR RENT—STATUTES—CONSTRUCTION. Under Civil Code of 1901, paragraph 2695, giving a landlord a lien on all nonexempt property of his tenant placed or used on the premises until the rent shall be paid, etc., a lien attaches for the entire term of the lease on all property of the tenant placed or used on the leased premises and subsists until all the rent for the term has been paid.

3. STATUTES—CONSTRUCTION—ADOPTION OF STATUTE OF SISTER STATE.— The territory adopting a statute of a state takes it as previously interpreted by the courts of the state.

4. FRAUDS, STATUTE OF—LEASES—VALIDITY—"LAWFULLY AUTHORIZED." Under Civil Code of 1901, paragraphs 721, 725, 732, 2696, providing that no estate in land for a term of more than one year shall be conveyed, except by an instrument in writing subscribed by the party disposing of the same, "or by his agent thereunto authorized in writing," that every conveyance of real estate must be acknowledged, and that, when an instrument intended as a conveyance shall fail, the same shall be valid as a contract on which a conveyance may be enforced, and prohibiting actions on any lease for more than one year, unless in writing and signed by the party to be charged, "or by some person by him thereunto lawfully authorized," a lease for more than a year, signed by one of the parties to be charged therein and by a person verbally authorized by the other party, but not acknowledged by either, is not a valid lease, but is not within the prohibition in paragraph 2696, and is enforceable as a contract to lease, the words "lawfully authorized" in paragraph 2696 not meaning an authorization in writing.

5. LIENS—RIGHTS AND LIABILITIES OF PURCHASERS.—A purchaser of property, subject to a lien enforceable at law, takes it subject to the lien, irrespective of notice, except where notice, real or constructive, is made essential by the registration law or the statute creating the lien, but where such lien is enforceable only in equity, a purchaser without notice takes the property free from the equitable claim, but a purchaser with notice of the facts takes it subject to the lien.

6. LANDLORD AND TENANT—LIEN FOR RENT—EQUITABLE LIEN.—Where
the relation of landlord and tenant exists in equity in consequence of
a lease signed by the tenant and by the agent of the landlord,
verbally authorized, but not acknowledged by the tenant or agent, the
landlord is entitled in equity to a lien for the rent on the tenant's
property placed on the premises.

7. SAME — SAME — ENFORCEMENT — VALIDITY OF LEASE.—Under Civil
Code of 1901, paragraph 1289, providing that the complaint shall set
forth a statement of the cause of action without any distinction be-
tween suits at law and in equity, and shall state the nature of the
relief demanded, a landlord under a lease, void at law as a lease
under the statute of frauds, but valid as a contract to lease, who
seeks to enforce a lien for rent on the property of the tenant on the
premises and sold by him to a third person, and who shows the facts
entitling him to subject the property to the lien as landlord, is
entitled to a judgment, awarding the appropriate relief, without first
obtaining specific performance of the contract to lease and then
establish his lien.

8. APPEAL AND ERROR—CROSS-ASSIGNMENTS OF ERROR.—Cross-assign-
ments of error which attack the maintenance of plaintiff's action are
maintainable.

9. SAME—SAME—REVIEW.—A cross-assignment of error complaining of
the sustaining of a demurrer to the special plea of defendant that
the court was without jurisdiction must be considered, so that, should
judgment finally be against defendant, it would not be necessary for
him to prosecute an appeal to determine the jurisdictional question.

10. BANKRUPTCY—JURISDICTION OF COURTS—EXISTENCE OF LIENS.—The
federal bankruptcy law does not operate to take jurisdiction from
courts otherwise authorized to determine the existence of liens on the
property of the bankrupt.

11. SAME—SAME.—That a sale by an assignee for the benefit of creditors
was confirmed by the trustee in bankruptcy of the assignor, pursuant
to an order by the referee in bankruptcy, and that the assignee paid
to the trustee the price paid by the buyer, does not deprive a state
court of jurisdiction to determine the existence of liens on the prop-
erty, where the order of the referee did not purport to relieve the
property of existing liens.

12. APPEAL AND ERROR—RESERVATION OF GROUNDS OF REVIEW—SUFFI-
CIENCY—REVIEW.—Where the court erroneously excluded evidence
which lay at the base of plaintiff's case, it was no ground for sus-
taining a judgment for defendant that an offer of proof by plaintiff
did not state all the facts which would authorize judgment in his
favor.

APPEAL from a judgment of the District Court of the
First Judicial District, in and for the County of Pima.   John
H. Campbell, Judge.   Reversed and remanded.

The facts are stated in the opinion.

S. L. Kingan, and G. E. Tralles, for Appellants.

A landlord under the statutes of Arizona has a lien upon the chattels of his tenant for rent due and to become due.

The landlord's lien is conferred by virtue of the provisions of paragraph 2695, Revised Statutes of Arizona, 1901: ''Every landlord shall have a lien upon all the property of his tenant not exempt by law, placed upon or used on the leased premises until his rent shall be paid, and such landlord, his agent or attorney, may seize, for rent, any personal property of his tenant that may be found on the premises or in the county where such tenant shall reside, but no property of any other person, although the same may be found on the premises, shall be liable for seizure for rent due from such tenant, and in case of the failure of the tenant to allow the landlord, his agent or attorney, to take possession of such property for the payment of rent, said landlord shall have the right to reduce such property to his possession by action against the tenant to recover the possession of the same, and may hold or sell the same for the purpose of paying said rent unless said rent shall be paid before sale, and every landlord shall have a lien upon the crops grown or growing upon the homestead premises for rent thereof, whether the same is payable wholly or in part in money or specific articles of property or products or the premises or labor, and also for the faithful performance of the terms of the lease, and such lien shall continue for a period of six months after the expiration of the term for which the premises were leased, and in all cases when the demised premises shall be let or lease assigned, the landlord shall have the same right to force his lien against the special lessor or assignee as he has against the tenant to whom the premises were leased.''

The lien having attached to the tenant's chattels to secure the payment of all rent that might become due under the contract of lease, it can only be displaced by sale of the goods and chattels in the ordinary course of trade, and where the tenant has sold his goods in bulk and they are about to be removed from the premises, the remedy of the landlord is in equity. *Marsalis* v. *Pitman,* 68 Tex. 624, 5 S. W. 404; *Ghio* v. *Shutts,* 78 Tex. 375, 14 S. W. 860.

"The landlord may have an injunction to restrain the sale and removal of the property from the demised premises by the tenant or his assignee." *Garner* v. *Cutting,* 32 Iowa, 547–552; *Miller* v. *Bider* (Iowa), 105 N. W. 594.

The relation of landlord and tenant existed between Murphy and Brown for the term of two years, and had a lien upon the goods of Brown to secure the payment of the rent for this term. The statutory lien is given the landlord against the goods of the tenant; the lien depends on the relation of landlord and tenant. If the relation exists so does the lien, and the lien will be coexistent with the relation. *Nelson, Admr.,* v. *Webb,* 54 Ala. 436. By reason of their contract, and by reason of part performance under and pursuant to that contract, the relation of landlord and tenant existed between Murphy and Brown. *Riggles* v. *Erney,* 154 U. S. 244, 14 Sup. Ct. 1083, 38 L. Ed. 976; *Danforth* v. *Laney,* 28 Ala. 274; *Reed* v. *Reed,* 12 Pa. 120.

"A person who acquires a legal title, or an equitable title, or interest in a given subject matter, even for a valuable consideration, but with notice that the subject matter is already affected by an equity, or equitable claim in favor of another, takes it subject to that equity or equitable claim": Pomeroy's Equity Jurisprudence, sec. 591.

Notice to the purchaser of whatever the inquiry would have disclosed, and knowledge on the part of a purchaser of corn from a tenant, of the fact of the tenancy is notice to the purchaser of any landlord's lien thereon for rent. *Watt* v. *Scofield,* 76 Ill. 261; *Smith* v. *Meyer,* 25 Ark. 609.

Frank H. Hereford, and F. E. Curley, for Appellees.

The supreme court of this territory has never been called upon to directly determine the right of an appellee to file cross-assignments of error. It has, however, inferentially sustained such right. *Arizona etc. Ry. Co.* v. *Nevitt,* 8 Ariz. 56, 68 Pac. 550; *Greene* v. *Hereford,* 12 Ariz. 85, 95 Pac. 105.

The courts have recognized and upheld the assignment of cross-errors, because it obviates the necessity of two separate appeals, two separate records, and the consideration of two cases instead of one. See *Merritt* v. *Richey,* 127 Ind. 400, 27 N. E. 131; *Duren* v. *H. & T. C. Ry. Co.,* 86 Tex. 287, 24 S. W. 258; *Ry. Co.* v. *Prather,* 75 Tex. 53, 12 S. W. 969.

Under the laws of the territory of Arizona the lease set up in the complaint created no estate in Brown, but was void and of no effect. In consequence, no lien could be predicated upon it. See, also, *Bloom* v. *Noggle,* 4 Ohio St. 51; *Erwin* v. *Shuey,* 8 Ohio St. 517; *Reid* v. *Kleyenstaver,* 7 Ariz. 50, 60 Pac. 79.

Our statutes provide that such a lease as is declared in this case can pass no interest in real estate; the statute does not limit its effect to purchasers without notice. Ariz. Rev. Stats., pars. 721, 725, p. 299. Questions of purchasers with or without notice are taken up by other sections of our statutes. Ariz. Rev. Stats., pars. 749, 735, pp. 301, 303.

NAVE, J.—Appellants were plaintiffs below. Most of the evidence offered by them was ruled out upon objection. We shall state such facts as are pertinent to the opinion to be rendered, without distinction between facts admitted by the pleadings or proved and those facts which are in the record only as set forth in offered testimony.

Lizzie B. Murphey is the owner of a building in Tucson. In January, 1907, W. E. Murphey subscribed to a written instrument, as agent of Lizzie Murphey, which purported to lease to the defendant Brown a portion of this building for a period of one year, commencing on February 1, 1907, at a rent payable monthly in advance, provided that if Brown should not notify Murphey to the contrary on or before October 31, 1907, the lease should be extended for a second period of one year. The instrument was signed by Brown. It was not acknowledged by Brown or Murphey. The authority of Murphey to sign the instrument was not in writing. Brown entered possession pursuant to this instrument, and paid rent to and including the rent for the month of January, 1908, conducting therein a retail merchandising business. He did not give notice whereunder the lease should be terminated at the end of one year. Before the end of the month of January, 1908, Brown became insolvent, and made an assignment of all his property to defendant Sims for the benefit of his creditors. Sims sold Brown's entire stock of merchandise, it being still on the demised premises, to defendant Friedman, and this sale was consummated before the expiration of the month of January, 1908. Friedman immediately entered into possession of the stock, and advertised to sell it at public sale at reduced

prices. Before the expiration of the same month, the plaintiffs Murphey instituted this suit against Brown, Sims, and Friedman, setting up substantially these facts, together with the further fact that Friedman purchased with knowledge of the tenancy; and prayed judgment that a lien exists in favor of plaintiff Lizzie B. Murphey for rent for the remainder of the term of two years contemplated by the lease, and that defendant Friedman be restrained from removing the stock of merchandise from the premises or from selling the same, to the end that the lien be not destroyed. An interlocutory injunction was granted. Brown was not served with process, and has not appeared in the action. At the trial the court refused to admit in evidence the written instrument, apparently upon the grounds that the authority of the agent to execute the same was not in writing, and that the instrument was unacknowledged by the lessor. The offer of oral testimony to substantiate certain allegations in the complaint was rejected, the rejection of such offer following logically from the determination of the court with reference to the admissibility of the written instrument. Judgment was rendered against the plaintiffs, and from this judgment they have appealed. Pending appeal, an injunction was granted maintaining the *status* of the property.

A variety of questions of law is presented for our determination. Without defining the relation of the several points to the assignment of error, we shall take them up *seriatim.*

1. The first question to be considered is: Does the statute which provides for a landlord's lien contemplate that the lien shall attach for rent as it becomes due, or does the lien attach at the beginning of the term to secure the rent of the entire term? The statute in question is paragraph 2695 of the Civil Code of 1901, the material part of which reads as follows: "Every landlord shall have a lien on all the property of his tenant not exempt by law, placed upon or used on the leased premises until his rent shall be paid, and such landlord, his agent or attorney, may seize, for rent, any personal property of his tenant that may be found on the premises or in the county where such tenant shall reside, but no property of any other person, although the same may be found on the premises, shall be liable for seizure for rent due from such tenant, and in case of failure of the tenant to allow the landlord, his agent

XII Ariz.—18

or attorney to take possession of such property for the payment of rent, said landlord shall have the right to reduce such property to his possession by action against the tenant to recover the possession of the same, and may hold or sell the same for the purpose of paying said rent unless said rent shall be paid before sale.'' To restate the question: Has the landlord under this statute protection for the payment of his rent from the moment his tenant's chattels are placed upon the leased premises, or does his protection begin only after the obligation for rent has matured? If the latter, then the landlord is but little aided by the statute; for he may obtain a lien by attachment for rent due. If the former, his protection is as complete as the value of the property upon the demised premises may make it. While courts must carefully refrain from extending beyond their expressed terms the effect of legislative enactments whereunder liens may be created, on the other hand, such statutes, being remedial in their nature, must be construed so liberally as to effectuate their palpable purposes. The purpose of this statute is manifestly to afford the landlord protection commensurate with the obligation assumed by his tenant. The statute prescribes how long the lien shall endure—until the rent shall be paid—but does not prescribe when it shall attach. It seems inconsistent with the purpose of the enactment that the lien shall not attach until the obligation for rent is matured; else on the day before the month or year shall have expired, where rent is payable monthly or annually, the tenant may remove his chattels free from lien. Under such interpretation the statute is without much value. The other alternative is that the lien shall attach when the chattels are placed upon the premises, and shall subsist until the end of the term, and thereafter until all rent shall have been paid; for there appears no logical reason to assert that the lien shall attach at the beginning of the month, or of the year, for the rent for the ensuing month or year only, to reattach for the second month or second year upon the inception of that second period. The lien provided for is a continuous lien, and not a disjointed lien, nor a series of liens from month to month or from year to year. The conclusion seems inevitable that the lien attaches for the entire term of the lease on all property of the tenant, placed upon or used on the leased premises, and subsists until all rent for the term has been paid. The supreme

courts of Iowa, Alabama, and Arkansas have reached the same conclusions upon similar statutes. *Garner* v. *Cutting,* 32 Iowa, 547; *Andrews* v. *Porter,* 112 Ala. 381, 20 South. 475; *Sevier* v. *Shaw,* 25 Ark. 417. The supreme court of the United States cites decisions of these courts with approval, in announcing its judgment interpreting a somewhat different statute, in *Fowler* v. *Rapley,* 15 Wall. 328, 21 L. Ed. 35.

2. The next question to be considered is as to the admissibility in evidence of the written instrument offered as a lease. The statutes which must be considered in this connection are paragraphs 721, 725, and 732 of the title "Conveyances," and paragraph 2696 of the title "Frauds and Fraudulent Conveyances." These paragraphs read as follows:

"721.   (Section 1.)   No estate of inheritance or freehold or for a term of more than one year, in lands and tenements, shall be conveyed from one to another unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized in writing."

"725.   (Sec. 5.)   Every deed or conveyance of real estate must be signed by the grantor and must be duly acknowledged before some officer authorized to take acknowledgments, and properly certified to by him for registration."

"732.   (Sec. 12.)   When an instrument in writing, which was intended as a conveyance of real estate, or some interest therein, shall fail either in whole or in part, to take effect as a conveyance by virtue of the provisions of this title, the same shall, nevertheless, be valid and effectual as a contract upon which a conveyance may be enforced as far as the rules of law will permit."

"2696.   (Section 1.)   No action shall be brought in any of the courts in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized: . . . (4) Upon any contract for the sale of real estate or the lease thereof for a longer term than one year."

It is contended by the appellee, and evidently was held by the trial court, that the instrument is not effective as a legal lease because it is not acknowledged, and because the agent who

signed it was not authorized thereunto by writing; that it is not admissible as an enforceable contract by reason of the provisions of paragraph 2696, because it was not signed by some person thereunto "lawfully authorized." The contention is made that the words "lawfully authorized" in paragraph 2696 are to be construed in the light of the words "authorized by writing" in paragraph 721. It must not be overlooked that paragraphs 721 and 725 are but continuations with some modifications of the first three sections of the English statute of frauds, and that paragraph 2696 is a continuation with some modifications of the fourth section of that statute. Precisely the difference in expression occurs in sections 1 and 4 of the English statute of frauds with reference to the authority of an agent that appears in paragraphs 721 and 2696. The execution of a conveyance, if by an agent, must be by an agent "authorized in writing," but the execution of an agreement to convey may be made by any person "lawfully authorized." It is not to be assumed that the different expressions are the result of inadvertence. The courts have for generations recognized and applied a difference in the two provisions. That one shall be "lawfully authorized" to sign a binding memorandum under section 4 of the statute of frauds does not mean that he must have been authorized in writing; he may have been verbally authorized, although to execute the conveyance he must have been authorized in writing. See cases collected in 20 Cyc. 276. The application of this interpretation to each section in the same jurisdiction is made in *Rutenberg* v. *Main,* 47 Cal. 213, and *Videau* v. *Griffin,* 21 Cal. 389. In adopting the quoted paragraphs from the statutes of Texas in 1887, we took them already so interpreted. *Huffman* v. *Cartwright,* 44 Tex. 296. In the light of this exposition, it is clear that the instrument in question is not within the inhibition of paragraph 2696, for it is in writing, signed by one of the parties to be charged therewith, and by a person thereunto verbally authorized by the other party to be charged therewith.

It is equally clear that the instrument is not a valid and effective lease by reason of the fact that it is for the term of more than one year, is subscribed by an agent of the disposing party, not thereunto authorized by writing, and furthermore, because it is not acknowledged. *Lewis* v. *Herrera,* 10 Ariz. 74, 85 Pac. 245. We have therefore an attempted lease which is

not a legal conveyance of the leasehold interest, but which complies with all the conditions imposed upon a valid contract for a lease. By paragraph 732 above quoted, there is legislative authority that an ineffective conveyance may nevertheless be an enforceable contract for a conveyance. This attempted conveyance, not being invalidated by reason of the provisions of paragraph 2696, is enforceable by reason of paragraph 732. It follows that the relation between Brown and Murphey is not in law that of landlord and tenant, but is such in equity; that is to say, the relation is not that which would be created by a legal lease, but is that created by the existence of a mutually enforceable contract to lease.

The legal consequence of this relation is that the instrument in question is not admissible as a legal lease, but is admissible as a valid contract to lease. Under the ancient and rigid rules whereunder the functions of courts of equity and courts of law were separated by an unbridged chasm, the predicate for legal relief from conditions arising out of the relations of these parties must first have been laid by the procuring of a legal conveyance of a leasehold interest by the aid of the decree of specific performance of a court of equity.

. 3. Under these conditions, may it be said with legal propriety that the relation of landlord and tenant existed between Murphey and Brown at the time of the purchase of the stock of merchandise by Friedman, and that, therefore, the stock was encumbered with a lien for the rent to become due for the remainder of the two years' period? From the conclusions just stated, the answer is inevitable that at law the relation of landlord and tenant did not exist; in equity, under the principle that that which ought to be done shall be regarded as done, the relation did exist. The results which follow from these two different aspects of the relation are very important. Where a lien enforceable at law has attached to property, the purchaser takes the property subject to the lien, irrespective of notice, except where notice, real or constructive, is made essential by registration laws or the statute whereunder the lien arises. It is equally true that, where a legal lien does not exist, a purchaser of property without notice of the existence of equities obtains the property as fully free from equitable claims as from liens at law. Nevertheless it is further true that, in behalf of one who is equitably entitled to a lien, equity

extends protection as against a purchaser with notice of the facts upon which rests the equitable right to the lien. The conclusions that must be reached as to this third aspect of the case are that the legal relation of landlord and tenant did not exist between Murphey and Brown; that in equity such relation did exist; that at law Murphey was not entitled to a lien upon the stock of merchandise; that in equity he was entitled to such a lien; that, if Friedman purchased the stock without notice of Murphey's equities, he has obtained the stock of merchandise free from Murphey's claim; that, if Friedman purchased the stock with notice of Murphey's equities, Murphey is entitled to enforce, as against Friedman, his equitable right to a lien.

4. This brings us to the consideration of the question of remedy. Murphey has neither obtained nor sought specific performance to crystallize his equitable relation of landlord and tenant into the legal relation, yet he seeks here for a decree adjudicating the existence of a lien upon the stock and for an injunction to restrain its removal by Friedman. We do not have separate courts of law and equity; we do not have even separate law and equity sides of the same court. Our courts, in considering complaints, act under the provisions of paragraph 1289 of the Civil Code of 1901, which reads as follows: "1289. (Sec. 80.) The complaint shall set forth clearly the names of the parties, a concise statement of the cause of action, without any distinction between suits at law and in equity, and shall also state the nature of the relief which he demands." It is manifest that here are brought before the court the interested party, and all of the facts upon which relief in any form may be had by the plaintiff. We can conceive of no reason why the court should say that the plaintiff must first obtain specific performance and then seek to establish his lien, nor even why he should seek specific performance in this suit to establish a lien. As against Friedman, if Friedman is without notice of Murphey's equities, specific performance would be unavailing; for the inception of the legal relation of landlord and tenant cannot be made retroactive so as to make the landlord's lien take precedence over the rights acquired by an innocent purchaser. *Reid* v. *Kleyenstauber,* 7 Ariz. 58, 60 Pac. 879. Such right as Murphey may have against the stock of merchandise must be predicated upon the facts as they existed

at the time of Friedman's purchase. Those facts are brought fully before the court by this proceeding, and if, as against Friedman, Murphey is entitled either in law or in equity to subject the property to his lien as landlord, the court should award the appropriate remedy. Similar conclusions have been reached in other jurisdictions where similar procedure prevails. *Wood Mach. Co.* v. *Lee,* 4 S. D. 495, 57 N. W. 238; *Sorrells* v. *Goldberg,* 34 Tex. Civ. App. 265, 78 S. W. 711; *Bless* v. *Jenkins,* 129 Mo. 647, 31 S. W. 938. We have already applied the principle by recognizing equitable defenses to actions at law. *Latimer* v. *Hamill,* 5 Ariz. 274, 52 Pac. 364; *Houghtaling* v. *Ellis,* 1 Ariz. 383, 25 Pac. 534. Every statute which has been quoted in this opinion, except paragraph 2695, was adopted by the legislature of this territory from the statutes of Texas. Hence the decision in *Sorrells* v. *Goldberg, supra,* is squarely upon the point.

5. The appellee Friedman has presented cross-assignments of error. It is unnecessary to determine whether as a matter of right he may have cross-assignments considered, except in so far as they fundamentally attack the maintenance of plaintiff's action. Such cross-assignments are maintainable. *Clark* v. *Liberty Co.,* 11 Ariz. 322, 94 Pac. 1134; *United States* v. *Meade,* 9 Ariz. 209, 80 Pac. 326; *Arizona etc. Co.* v. *Nevitt,* 8 Ariz. 64, 68 Pac. 50. One of the assignments is upon the ruling of the trial court sustaining a demurrer to a special plea of the defendant that the court is without jurisdiction to entertain the action. It is appropriate, even if not mandatory, to consider the ruling of the court upon this demurrer, in order that, should the judgment of the trial court finally be against the appellee, it shall not be necessary for him to prosecute an appeal to determine this jurisdictional matter. The point devolves upon the following allegations of fact: That, immediately after Brown conveyed the stock in question to Friedman, a petition was filed in the district court of the second judicial district to have the defendant Brown declared a bankrupt; that thereafter that court adjudicated Brown a bankrupt, and that a trustee in bankruptcy was appointed; that thereafter the trustee confirmed the sale made by Sims, as assignee, to Friedman, pursuant to an order made by the referee in bankruptcy; and that Sims paid over to the trustee the purchase money paid by Friedman. Upon these facts the

appellee contends that the trial court is without jurisdiction to adjudicate the issue presented; that the whole matter must be relegated for adjudication to the court of bankruptcy. To determine this contention, it must be observed that the bankruptcy law does not operate to take jurisdiction to determine the existence of liens from the courts which ordinarily would have such jurisdiction. *Jaquith* v. *Rowley,* 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620. Let it be assumed without giving approval to the doctrine, that under the bankruptcy law the trustee may take property subject to a lien and may sell it either charged with the lien or free from it, as the best interests of the estate require, the proceeds, in the latter instance, being chargeable with the lien, in the hands of the trustee. Loveland on Bankruptcy, secs. 256, 256d. Friedman does not aver that the act of the trustee or an order of the referee in terms confirms the sale of the assignee to be operative retroactively as a sale by the trustee nor as a sale free from the lien. It cannot be presumed in aid of the pleading—for even by the most liberal construction it cannot be said even inferentially to be averred—that the order of the referee or the act of the trustee was intended to have such action, or was in such terms that it could by any interpretation be held so operative. Whether or not the referee or trustee could so ratify the action of the assignee, it is evident that, if the order did not purport so to operate, it did not relieve the property of the lien. Therefore the judgment of the trial court in sustaining the demurrer to the plea of jurisdiction was abundantly justified.

6. After the trial court had ruled out the offered defective lease, the plaintiffs made an oral offer to prove by the witness upon the stand a series of facts in support of the essential allegations of the complaint, which offer, upon Friedman's objection, was rejected. Friedman now urges that, in various respects, the facts so offered are insufficient to support the relief sought, even were the instrument admitted and given full evidential value. We will not scrutinize the offer in the light of this contention. That evidence, without which plaintiffs could not possibly prevail, was ruled out. It would have been an imposition upon the trial court, to which it need not submit, should plaintiffs, after that ruling, attempt to prove all the remaining essentials to their case. In the emergency

in which the ruling left them, plaintiffs' sole relief lay in an appeal. By no further evidence could they make their case; indeed, in the view of the law taken by the trial court, no further evidence was admissible, for lack of predicate by way of proof of the existence of the relation of landlord and tenant. "We do not think that, in the absence of notice from the court that he must do so, a party is bound to proceed to offer further evidence in the case, when a ruling is made which renders it impossible for him to recover." *Brundage* v. *Mellon,* 5 N. D. 72, 63 N. W. 209. In a precisely analogous case it is said: "After ruling as a matter of law that Willis was estopped by the former adjudication, he was under no obligation to offer any evidence; and it cannot be said here that his offer was not sufficiently broad or specific, for we cannot tell what, but for the erroneous ruling, he might have proved." *Loeb* v. *Willis,* 100 N. Y. 235, 3 N. E. 177.

By reason of the error in the rejection of the offered instrument, the judgment of the district court is reversed, and the cause is remanded for a new trial.

KENT, C. J., and SLOAN and DOAN, JJ., concur.

NOTE.—As to personal liability of purchaser of property subject to lien, see note to Rogers-Ruger Co. v. Murray (Wis.), 59 L. R. A. 737.