IN THE
# Arizona Court of Appeals
## Division One

PNC BANK, N.A.,
*Petitioner*,

*v.*

THE HONORABLE CHRISTOPHER COURY,
Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA,
in and for the County of MARICOPA,
*Respondent Judge*,

JENNINGS, STROUSS & SALMON, P.L.C., an Arizona professional
limited liability company; RED CITYSCAPE DEVELOPMENT, LLC,
a Delaware limited liability company; and RESOLUTE COMMERCIAL
SERVICES, LLC, an Arizona limited liability company in its capacity
as Receiver for Jennings, Strouss & Salmon, P.L.C.,
*Real Parties in Interest*.

No. 1 CA-SA 23-0231
FILED 2-6-2024

Petition for Special Action from the Superior Court in Maricopa County
No. CV 2023-012249
The Honorable Christopher Coury, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Engelman Berger, P.C., Phoenix
By Kevin M. Judiscak, Scott B. Cohen, Bradley D. Pack
*Counsel for Petitioner*

Burch & Cracchiolo, P.A., Phoenix
By Andrew Abraham, Ralph Harris, Daryl Manhart
*Counsel for Real Party in Interest Red Cityscape Development, LLC*

Sacks Tierney P.A., Scottsdale
By Bryan J. Gottfredson, Phil Rudd, Wesley Ray
*Counsel for Real Party in Interest Jennings, Strouss & Salmon, P.L.C.*

Allen, Jones & Giles, PLC, Phoenix
By Michael A. Jones
*Counsel for Real Party in Interest Resolute Commercial Services, LLC*

---

**OPINION**

Presiding Judge D. Steven Williams delivered the Court's opinion, in which Judge Samuel A. Thumma and Judge Paul J. McMurdie joined.

---

**W I L L I A M S**, Judge:

¶1 Petitioner PNC Bank, N.A. ("PNC Bank") seeks special action relief regarding a landlord's lien. More specifically, PNC Bank challenges the superior court's ruling that a landlord's lien held by Red Cityscape Development, LLC ("Red Cityscape") under A.R.S. § 33-362 on "all property . . . placed upon or used on" Jennings, Strouss & Salmon, P.L.C.'s ("the Firm") leased office space ("the Premises") has priority over PNC Bank's perfected security lien on the Firm's general intangibles, including its accounts receivable. Because a statutory landlord's lien attaches only to tangible property on leased premises, it does not include accounts receivable. Accordingly, we accept special action jurisdiction and grant relief.

**BACKGROUND**

¶2 The parties do not dispute the relevant facts. Since 2010, the Firm has leased the Premises from Red Cityscape under a written lease agreement that expires by its terms in 2026. While the written lease agreement lists various remedies in the event of the Firm's default, it does not provide for a contractual landlord's lien upon the Firm's property.

¶3 In May 2023, a few months before it ceased operating, the Firm obtained a written line of credit ("the Loan") from PNC Bank. The Firm also executed a security agreement granting PNC Bank an interest in

its property ("the Collateral"). The agreement defined the Collateral securing the Loan as:

> [A]ll of the following property of the [Firm], whether now owned or hereafter acquired, created, or existing, however the [Firm's] interest may arise or appear, and wherever located: (i) accounts . . . (xv) general intangibles, of every kind and description, including payment intangibles . . . (xix) any and all other personal property and assets of the [Firm]; and (xx) cash and noncash proceeds . . . of any of the foregoing property.

In June 2023, PNC Bank filed a Uniform Commercial Code ("UCC") financing statement with the Arizona Secretary of State, perfecting its security interest in the Collateral.

**¶4**         Soon thereafter, the Firm defaulted on the Loan, and PNC Bank filed a complaint against it, alleging breach of contract and requesting the appointment of a receiver. In written correspondence to PNC Bank, Red Cityscape asserted that it held a superior landlord's lien on the Firm's accounts receivable. Upon the parties' stipulation, the superior court directed PNC Bank and Red Cityscape to file simultaneous briefing concerning the "priority of their respective liens in and to the accounts receivable of [the Firm]." Thereafter, Red Cityscape filed a creditor claim in PNC Bank's receivership proceeding.

**¶5**         After full briefing, the superior court determined that a statutory landlord's lien attached at the beginning of the lease term to all property "placed upon or used on" the Premises and that the lien remained "in effect since [that time]." Based on this determination, and citing A.R.S. § 33-362, the court found Red Cityscape's landlord's lien superior to PNC Bank's perfected security lien for all property "placed upon or used on" the Premises. Applying a statutory definition for personal property, the court concluded that while accounts receivable lack a "physical, tangible presence" and therefore cannot be *placed upon* leased premises, A.R.S. § 33-362, they may be *used on* leased premises to the extent the lessee's "accounting functions . . . occurred at the leased premises." Accordingly, the court declared that Red Cityscape's "landlord's lien has priority to all other liens, including PNC [Bank]'s perfected lien on general intangibles, for the Firm's general intangibles (including accounts receivable)," implicitly denying PNC Bank's motion for summary judgment on the superiority of its lien, and the court ordered the parties to submit "additional briefing on the factual issue of whether the Firm's accounts

3

receivable were 'used on' the Firm's leased premises." PNC Bank petitioned this court for special action relief.

## SPECIAL ACTION JURISDICTION

**¶6**       "Special action jurisdiction is discretionary, but appropriate when no 'equally plain, speedy, and adequate remedy by appeal' exists." *Gutierrez v. Fox*, 242 Ariz. 259, 264, ¶ 12 (App. 2017) (quoting Ariz. R. P. Spec. Act. 1(a)). We also have the discretion to accept special action jurisdiction when a statute requires interpretation "and a petition presents a purely legal issue of first impression that is of statewide importance." *Id.* at ¶ 13 (internal quotation and citation omitted).

**¶7**       Here, the petition for special action raises an issue of first impression concerning the scope of a statutory landlord's lien. And given the apparent insufficiency of the Firm's resources to satisfy the liens of both PNC Bank and Red Cityscape and the prospective distribution of accounts receivable funds based on a determination of lien priority, in the exercise of our discretion, we accept special action jurisdiction.

## DISCUSSION

**¶8**       PNC Bank argues that a statutory landlord's lien cannot attach to intangible property, such as accounts receivable. This special action presents an issue of statutory interpretation, which we review *de novo*. *Am. C.L. Union of Ariz. v. Ariz. Dep't of Child Safety*, 251 Ariz. 458, 461, ¶ 11 (2021). In interpreting a statutory provision, "[a]bsent ambiguity or absurdity, our inquiry begins and ends with the plain meaning of the legislature's chosen words, read within the overall statutory context." *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523, ¶ 11 (2021) (internal quotation and citation omitted). When statutes relate to the "same subject or general purpose," we read them together. *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017). "A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019). Accordingly, we "strive to construe a statute and its subsections as a consistent and harmonious whole." *Hoffman v. Chandler*, 231 Ariz. 362, 363, ¶ 7 (2013) (quotation and citation omitted).

**¶9**       We begin by examining A.R.S. §§ 33-361 and -362, which outline landlord remedies in the event of a tenant default. Section 33-361 states, in relevant part:

A. When a tenant neglects or refuses to pay rent when due . . ., the landlord . . . may reenter and take possession or . . . commence an action for recovery of possession of the premises.

. . .

D. If the tenant refuses or fails to pay rent owing and due, the landlord shall have a lien on and may *seize* as much personal property of the tenant *located on* the premises and not exempted by law as is necessary to secure payment of the rent. If the rent is not paid and satisfied within sixty days after seizure . . ., the landlord may sell the *seized personal property*[.]

(Emphasis added.) Section 33-362 provides, in relevant part:

A. The landlord shall have a lien on all property of his tenant . . . *placed upon or used on* the leased premises, until the rent is paid.

. . .

B. The landlord may *seize* for rent any personal property of his tenant *found on* the premises[.]

(Emphasis added.)

¶10        Given a plain reading, A.R.S. § 33-361 encompasses a temporal component, such that a landlord's right to "seize" a tenant's "personal property" does not arise until the tenant "neglects or refuses to pay rent when due." Section 33-362, by contrast, includes no temporal limitation, meaning a landlord's lien immediately "attach[es] when [property is] placed upon the [leased] premises," and it remains in place "until all rent for the term has been paid." *Murphey v. Brown*, 12 Ariz. 268, 274 (1909*); see also Ex-Cell-O Corp. v. Lincor Properties of Ariz.*, 158 Ariz. 307, 309 (App. 1988) ("The general rule is that a landlord's lien attaches at the commencement of the term or when the property is first brought on the leased premises.").

¶11        To determine the scope of property subject to a statutory landlord's lien under A.R.S. § 33-362, the superior court first looked to A.R.S. § 1-215(30), which defines "personal property" as "includ[ing] money, goods, chattels, things in action and evidences of debt." A "thing in action" is statutorily defined elsewhere to mean something other than a

good. *See* A.R.S. § 44-6001(3) (under a portion of Arizona's retail installment sales transaction statute, "'Goods'" means all tangible chattels, *except* motor vehicles, money, *things in action* or intangible personal property other than merchandise certificates or coupons as described in this chapter") (emphasis added). And under Article 9 of Arizona's version of the UCC a "thing in action" is included in the definition of a "general intangible." *See* A.R.S. § 47-9102(A)(42) ("'General intangible'" means any personal property, *including things in action*, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction. General intangible includes payment intangibles and software."). [1] "'Things in action'" is another expression for 'chose in action' which is defined as an in personam right to recover debt, money or a thing, and is in contrast to the term 'thing movable' which historically refers to chattels or goods." Hawkland, Uniform Commercial Code Series, § 2-105:2 ("Goods-Exclusions") (footnotes and citations omitted) (Oct. 2023 Update); *see also Chose in Action*, Black's Law Dictionary (11th ed. 2019) ("[A] known legal expression used to describe all personal rights of property which can only be claimed or enforced by action, and not by taking physical possession.") (quoting William R. Anson, *Principles of the Law of Contract* 362 n.(b) (Arthur L. Corbin ed., 3d Am. Ed. 1919)); *see also Am. C.L. Union of Ariz.*, 251 Ariz. at 461, ¶ 13 ("In the absence of a statutory definition, courts may reference dictionaries."). Applying these definitions within the context of A.R.S. § 33-362, we agree with the superior court that accounts receivable constitute "things in action," falling within the ambit of "property" for purposes of statutory landlord's liens.

¶12 But a landlord's lien arising under A.R.S. § 33-362 attaches only to property "placed upon or used on" the leased premises. Although A.R.S. § 33-362 is remedial and should be liberally construed to effectuate its purposes, we cannot extend the scope of a landlord's lien arising under A.R.S. § 33-362 beyond the statute's express terms. *Murphey*, 12 Ariz. at 274 ("[C]ourts must carefully refrain from extending beyond the[] expressed terms [] of legislative enactments whereunder liens may be created."). The question presented here is whether subsection A's qualifying phrase

---

[1]     PNC Bank seemingly questions the application of A.R.S. § 1-215(30)'s broad definition of personal property within the context of statutory landlord's liens, noting that the UCC definition of "general intangible" expressly excludes "accounts." *See* A.R.S. § 47-9102(A)(42). As PNC Bank acknowledges, however, the UCC does not govern statutory landlord's liens. *See Ex-Cell-O Corp.*, 158 Ariz. at 308.

"placed upon or used on," together with other related statutory terms within the provision, limit the scope of A.R.S. § 33-362 to physical, tangible property.

¶13 Pointing to *Ex-Cell-O Corp.*, 158 Ariz. at 309, which holds that a landlord's lien does not attach until goods are "first brought on the leased premises," PNC Bank argues that a landlord's lien cannot attach to accounts receivable because they have no physical location and therefore are never *placed upon* leased premises. Red Cityscape counters that, in this case, the Firm *placed* the accounts receivable *on* the Premises when its accounting department (located on the Premises) created the corresponding billing statements for the Firm's clients and recorded related account information within the Firm's "books and records," whether in "paper form" or electronically "maintained." But contrary to Red Cityscape's apparent contention, bills, invoices, and other accounting records are not, themselves, accounts receivable; rather, they document the existence of accounts receivable. Indeed, an account receivable can exist without documentation, and the inverse is also true; documentation purporting to evidence an account receivable cannot, itself, create a right to payment.

¶14 Next, citing the principle that all property must have a "situs" for purposes of determining jurisdiction, *Hook v. Hoffman*, 16 Ariz. 540, 547 (1915), Red Cityscape argues that the Firm's principal place of business and location for its accounting department—the Premises—most logically qualifies as the situs for its accounts receivable. *See State ex rel. Napolitano v. Gravano*, 204 Ariz. 106, 117, ¶ 45 (App. 2002) ("[T]he site of intangibles is with the owner.") (citation omitted). But Red Cityscape has not cited any legal authority for the proposition that the "mere fiction" of ascribing an intangible a situs for jurisdictional purposes also applies to landlord's liens, and our research reveals none. *See State v. W. Union Fin. Servs.*, 220 Ariz. 567, 574, ¶ 34 (2009) (acknowledging the historical practice of "attempt[ing] to assign a fictional situs to intangibles") (quotation omitted); *see also Kelly v. Bastedo*, 70 Ariz. 371, 377 (1950) (explaining that the term "situs," in relation to intangibles, "signifies power or jurisdiction" rather than "location"); *Gen. Motors Corp. v. Ariz. Dep't of Revenue*, 189 Ariz. 86, 101-02 (App. 1996) (rejecting notion that an intangible, which "ha[s] no physical location . . . necessarily has a single discrete situs").

¶15 Finally, Red Cityscape argues that the Firm *used* its accounts receivable *on* the Premises when it offered them as collateral to secure the Loan. Viewed in isolation, the term "used" in A.R.S. § 33-362 arguably encompasses this financial transaction. But read within the broader statutory context, the scope of a landlord's lien is unambiguously limited

to property "located on the premises"—that which can be "found" and "seize[d]." A.R.S. §§ 33-361(D), -362(B). In other words, A.R.S. §§ 33-361(D) and -362(B), together, make clear that for a landlord's lien to attach, the property must be physically present *on* leased premises when put to *use*. *See Stambaugh*, 242 Ariz. at 510, ¶ 11 (concluding an arguably ambiguous statutory term could reasonably be given "only" one meaning when examined in the context of all the statute's provisions). Had the legislature intended for a statutory landlord's lien to attach to all tenant property, independent of its physical presence on the leased premises, it surely would have said so. Because accounts receivable cannot be located, found, seized, or used *on* leased premises, they are not subject to a statutory landlord's lien.[2]

## CONCLUSION

¶16        For the foregoing reasons, we accept jurisdiction and grant relief. Both parties request an award of their attorneys' fees under A.R.S. § 12-341.01, which authorizes an award of attorney's fees to the successful party "[i]n any contested action arising out of contract." In our discretion, we award PNC Bank its reasonable attorney's fees and taxable costs upon compliance with ARCAP 21.[3]

AMY M. WOOD • Clerk of the Court
FILED:    AA

_____

[2]        Because Red Cityscape has no statutory landlord's lien on the Firm's accounts receivable, we need not address PNC Bank's alternative argument asserting the superiority of its lien.

[3]        On January 17, 2024, this court issued an order accepting special action jurisdiction and granting relief "insofar that the landlord's lien does not attach to a tenant's receivables and intangible property." The order stated that a written opinion would follow. On January 31, 2024, PNC Bank moved this court to clarify "that the time for PNC [Bank] to file a statement of attorneys' fees and costs . . . will be 10 days from the issuance of the Court's forthcoming opinion," rather than 10 days from the January 17th order. Because no award of attorneys' fees was made as part of the January 17th order, we decline to issue a separate order addressing PNC Bank's motion for clarification.