No. 2,326.

39  543
122  283

ADAM WINGARD, APPELLANT, *v.* PHINEAS BANNING, RESPONDENT.

LIEN—ACTION TO ENFORCE—PARTY TO.—In an action to enforce a lien on property in the adverse possession of a third person, the person in possession must be made a party defendant; otherwise the judgment, as to him, is void.

LIEN FOR FREIGHT—ABANDONMENT OF.—The lien of a common carrier for freight or transportation of property, is lost by the voluntary surrender of the possession.

IDEM.—If a common carrier sues out, and procures to be levied, a writ of attachment against property on which he has a lien for freight, he thereby abandons and forfeits his lien.

IDEM—PROPERTY HELD ADVERSE TO.—When a party holds a lien on property which he claims is wrongfully in the possession of a third party, his remedy is by an action to recover the possession or for a wrongful conversion.

APPEAL from the District Court of the Seventeenth District, Los Angeles County.

The facts are stated in the opinion.

*Thom & Bross* and *William M. Pierson,* for Appellant.

*First*—Banning lost his lien, if he ever had one, by abandoning the possession of the machinery. Possession is always essential to the existence of a lien. (*Sineker* v. *Ayeshford,* 1 Cal. 80; Story on Bailments, Sec. 588; Abbott on Shipping, Sec. 288; Story on Agency, Secs. 352 *et seq.* 361, 367; 2 Kent, pp. 819, 639; *Jacobs* v. *Latrobe,* 5 Bingham, 389.)

*Second*—He lost his lien, if he ever had one, when he made the affidavit for attachment in his suit against the Mitchell and Owens Mining Company, in which he swore that he had no lien. The oath then and the present claim are irreconcilable. (Practice Act, Sec. 121.)

He also lost any lien he might have had by causing the property to be taken in execution in his own suit. (Story on Agency, Sec. 367; *Jacobs* v. *Latrobe,* 5 Bing. 130.)

The attachment which purports to have been levied the 2d of May, 1866, on said machinery as the property of the Mitchell and Owens Mining Company, cannot avail him, because at the time the attachment was issued and levied that company had no interest in the machinery. It had become Mitchell's by a *bona fide* purchase in December,

1865, nearly five months anterior to the issuing of the attachment. And even if the mining company had been the owner of the machinery at the time of the Banning attachment levy, the security which would otherwise have resulted from such attachment was lost by the failure of the officer to retain the property in his possession. (Pr. Act, Sec. 130.)

*Glassell, Chapman & Smith,* for Respondent.

*First*—The defendant acquired a perfect title to the machinery by the sale under his execution. (Story on Agency, Sec. 371 ; 2 Kent's Com. [642] ; 1 Story's Eq. Sec. 506 ; 2 Story's Eq. Secs. 1216–17.)

Defendant had a lien upon the machinery for his freight, and to the extent of his interest, and so far as the possession was concerned, his right was precisely equivalent to that of absolute ownership. (*Lewis* v. *Tyler,* 23 Cal. 364 ; 2 Kent's Com. 827, [634]; 2 Green. on Ev. Sec. 637 ; Sedgwick on Dam. 562, [482]; 1 Abb. N. Y. Dig. 370.)

The Sheriff and Mitchell, in seizing the property, were therefore mere trespassers. (*Van Pelt* v. *Litler,* 14 Cal. 194; *Boulware* v. *Craddock,* 30 Cal. 190 ; Pract. Act, Sec. 128 ; *Wood* v. *Orsen,* 25 N. Y. 356; *Harris* v. *Murray,* 28 Cal. 576.)

Defendant's lien could only be lost by his voluntary relinquishment. It could not be affected by the involuntary loss of possession, occasioned by the unlawful seizure of another. (Kent's Com. 833, [648]; Story on Agency, Secs. 367, 369 ; Story on Bailments, Sec. 299 ; *Allen* v. *Spencer,* 1 Edm. 117; Cited 8 Abb. N. Y. Dig. 301 ; *Kinloch* v. *Craig,* 3 Durn. & East. 122 ; *Jones* v. *Pearl,* 1 Str. R. 556 ; *Sweet* v. *Pym,* 1 East. R. 4 ; *Wallace* v. *Woodgate,* Ryan & M. 193 ; S. C. 1 Car. & P. 575.)

It was not destroyed, therefore, by the sale to Mitchell or the subsequent sale to Wingard. If these parties acquired any right at all, it was only that of the Mitchell and Owens Mining Company, namely: the general property subject to Banning's lien and right of possession. Defendant could have sued either Mitchell or Wingard for the possession; and no previous demand was necessary before suit. (*Boul-*

*ware* v. *Craddock*, 30 Cal. 190; *Moore* v. *Hitchcock*, 4 Wend. 292–6; *Stieff* v. *Hart*, 1 N. Y. Coms. 20; 9 *Id.* 185; *Wheeler* v. *McFarland*, 10 Wend. 322; *Baker* v. *Hoag*, 3 Seld. 7 N. Y. 557; 3 Abb. U. S. Dig. 207, 17; *Hays* v. *Riddle*, 1 Sand. 252; Story on Agency, Sec. 299; *McComber* v. *Parker*, 14 Pick. 497, 510.)

This principle is true with regard to all purchasers from the first wrong-doer, whether with or without notice. (Cases above cited; 2 Black. Com. [447–9]; Const. of Cal. Art. I, Sec. 8, Hitt. 92; *Reeves* v. *Capper*, 5 Bing. N. C. 136; *Palmer* v. *Hand*, 13 Johns. 433.)

Defendant, and the Sheriff as his agent, had the right to seize the property wherever they could find it. Such right belongs to every man who is unlawfully deprived of the possession of his property. (3 Black. Com. [4]; 3 Bouvier's Jurisp. 22.)

It is difficult to conceive upon what grounds appellant's counsel can contend that at the date of the sale to Mitchell, Banning had abandoned his lien. Every circumstance of the case shows affirmatively that he had no such intention. (1 Cal. Dig. pp. 1–2; 1 Domat, Strahan, Sec. 2173.)

The desertion of Banning's agents without his knowledge, can in no manner be taken as evidence of *intention*, on his part, to abandon the possession. Nor could their absence make any difference to Mitchell, who knew full well of Banning's possession. (*Suñal* v. *Hepburn*, 1 Cal. 265–6, and other authorities cited; Burrill L. Glos. 810; 1 Domat's Civil Law, Strahan, Secs. 2127–9, 2130–2–5–8, 2145, 2169, 2170; Green. Ev. Sec. 614, *et seq.*; 2 Saunders' Pl. and Ev. [863.]

*Second*—The second point of appellant is, that Banning lost his lien by making an affidavit in his suit against the Mitchell and Owens Mining Company, *that he had no lien.* This, appellant's counsel contend, operated as "a waiver of any lien he might have had."

Appellant's counsel cite no authority in support of this proposition; nor do they tell us *how* the affidavit could have had such an effect.

The purpose of the attachment was to regain the possession of the property of which Banning had been deprived by Mitchell. In other words, it was intended only as a means of preserving and enforcing the lien by regaining possession. All that can be inferred from the affidavit is, that Banning was mistaken as to the legal proposition involved in it.

There is no proof that Banning directed the attachment to be levied on the property in question. Nor is there any return or evidence that a levy was made. The only thing done by the Sheriff was to write on the attachment: "I hereby attach" the property in question. The writing of this attachment did not constitute a levy.

The principle upon which it has been held that a lien holder *may* lose his lien in certain cases by the levy of an execution in his own suit is, that he thereby voluntarily parts with the possession of the goods, and so manifests an *intention* to relinquish his lien. (*Townsend* v. *Newell*, 14 Pick. 335; *Whataker* v. *Sumner*, 20 Pick. 406.)

In this case Banning did not, voluntarily or otherwise, part with the possession of the machinery, for he did not have it. The proposition of the appellant amounts to this: that a lien holder, by re-taking the possession of the *lien goods* from the hands of a trespasser, thereby loses his lien.

No intention was manifested on the part of Banning to relinquish his lien. In whatever point of view we look at it, the contrary clearly appears

CROCKETT, J., delivered the opinion of the Court, RHODES, C. J., and TEMPLE, J., concurring :

The plaintiff sues to recover certain machinery for a quartz mill, which he avers the defendant has converted to his own use. The machinery was originally the property of the Mitchell and Owens Mining Company, from which company the plaintiff deraigns his title through a judgment and execution against the company, a Sheriff's sale to one Mitchell, and a conveyance from Mitchell to this plaintiff. The defendant is a common carrier, and, as such, contracted with the mining company to transport the machinery from

San Francisco to Owensville, in Inyo County, which service he duly performed; but the company having failed to pay the freight, he declined to deliver the machinery, and transported it to Camp Independence, in the same county, where he left it on the parade-ground; the commanding officer of the post promising to look after it, and one Mathews, who resided on a farm in the vicinity, also being requested to take care of it. Subsequently the defendant commenced an action in Los Angeles County against the mining company for the recovery of the balance due for the freight, and to enforce his lien on the machinery to secure its payment. But he also took out an attachment in the same action against the company, which was levied on the machinery in Inyo County, and in procuring the attachment made the affidavit required by the statute, to the effect that the debt was not secured by any lien or mortgage. He subsequently obtained an ordinary money judgment against the company in this action; but there was no provision in it adjudging a lien on the machinery, or directing its sale. On this judgment an execution in the usual form was issued, which was levied on the machinery, and under which it was sold to the defendant for a sum considerably less than the amount of the judgment. The sale to Mitchell under his judgment and execution against the company was several months prior to the institution of the action by the defendant, and the plaintiff claims that Mitchell acquired a valid title to the machinery, subject to any lien to which the defendant was entitled for the unpaid freight money; but he further claims that the defendant lost his lien by an abandonment of the possession of the property, and that, if it was not sooner lost, the levying of the defendant's attachment and subsequent execution on the machinery was, in law, an abandonment of the lien which he held as a common carrier. On the trial the Court rendered a judgment for the defendant, and the plaintiff has appealed.

To defeat the plaintiff's recovery the defendant insists: First—That the judgment, execution and Sheriff's sale under which Mitchell, the plaintiff's grantor, acquired his title, was fraudulent and collusive, and was intended to

hinder and delay the creditors of the mining company, of whom the defendant was one. Second—That the defendant acquired a valid title to the property by his attachment and execution sale; and lastly, that if the latter proposition .is not maintainable, the defendant's lien for the freight money is a valid, subsisting lien, and that he is entitled to have it satisfied out of the property. The first point finds no support in the evidence. There is nothing in the case to show that Mitchell's demand against the company was not an honest *bona fide* debt, or that the judgment was in any respect fraudulent or collusive. It further appears that, immediately after his purchase, Mitchell took possession of the property, placed it in charge of a keeper, and retained the actual possession until he sold and delivered it to the plaintiff.

The second point of the defendant is equally without merit. The sale to Mitchell occurred prior to the time when the defendant instituted his action to enforce his lien, and if the judgment which he recovered be treated as a simple money judgment, he acquired no title by his attachment and execution sale, for the obvious reason that the mining company then had no title to be conveyed. All its interest in the property had already been sold and conveyed to Mitchell. On the other hand, if the defendant's judgment against the company be deemed to be a judgment to enforce his lien, it was unavailing for that purpose as against Mitchell, who had acquired the title of the company, and was, therefore, a necessary party to the action. Not having been made a defendant, and being in no manner privy to it, so far as the proof shows, he was in no respect affected by it. As to him the judgment was void. This brings us to the last point, to wit: whether or not the defendant has a valid, subsisting lien on the property. If it be conceded that there was no abandonment of the possession by leaving the property at Camp Independence, under the circumstances shown by the proofs, we are, nevertheless, of the opinion that the lien was lost by the suing out an attachment and levying it on the machinery. In order to procure the attachment the defendant was required by the statute to

state in an affidavit that his demand was not secured by any lien, pledge or mortgage. The defendant made the necessary affidavit and caused the attachment to be issued and levied on the machinery. The levy could lawfully be made only by the seizure of the property by the Sheriff, and the Sheriff having stated in his return that he levied the attachment on the machinery, we must presume that he performed his duty and seized the property. At this point in the proceedings the defendant clearly abandoned the possession, if he had not done so before. When he instructed the Sheriff to take possession of it under the attachment, he voluntarily relinquished his own claim to the possession and transferred it to the officer, who thenceforth held it, not as the agent of the defendant, but as an officer of the law responsible for its safe custody as well to the defendant as the plaintiff in the action. After its seizure under the attachment it was no longer in the possession or custody of the defendant, and his lien was lost by his voluntary surrender of all claim to the possession. Nor is it an answer to this proposition to say that Mitchell had already taken the actual possession under his purchase, and that the attachment was resorted to by the defendant for the very purpose of regaining the possession, in order that the property might be subjected to his lien. If the defendant intended to rely upon his lien, and if the property was wrongfully taken from his custody by Mitchell, the remedy was by an action against him, either to recover the possession or for a wrongful conversion, in which the measure of damages would have been the amount of the lien, not exceeding the value of the property. Instead of resorting to this, which was the only appropriate remedy, the defendant not only made an affidavit to the effect that he had no lien, but he instructed the Sheriff to seize the property and hold it as a security for his demand. In doing so he clearly abandoned his lien, and elected to rely on his attachment as a security. The practice is not to be tolerated which would permit a party holding and claiming a lien on property to swear that he has no lien, and on the faith of his affidavit to that effect, to procure an attachment, and, subsequently, when the attachment proves unavailing, to

fall back on the alleged lien in the very face of the affidavit. This would be to permit him to gamble on the result, and would lead to perjury and fraud. It would pervert the plainest principles of law and justice to allow a plaintiff to seize the property of the defendant in advance of a judgment on a sworn statement that the debt was not secured by a lien, pledge, or mortgage, and afterwards to permit him, notwithstanding his oath to the contrary, to assert a lien on the very property seized under the attachment. Having obtained the attachment on the faith that there was no lien, every consideration of equity and fair dealing, and a due regard to the good faith which the law exacts of litigants, demand that he should be estopped from afterwards asserting the contrary.

Judgment reversed, and cause remanded for a new trial.

By SPRAGUE, J. : I concur in the judgment.

WALLACE, J., expressed no opinion.