[Civil No. 4561.   Filed February 28, 1944.]

[146 Pac. (2d) 208.]

J. A. DEWAR, Appellant, v. OLA E. HAGANS; W. C. WILLIAMS, J. D. WILLIAMS, C. R. WILLIAMS and ALPHA E. RUDD by J. H. WILLIAMS, Their Attorney-in-Fact, Appellees.

Mr. Milton L. Ollerton, for Appellant.

Messrs. Lewkowitz & Wein, for Appellee.

McALISTER, C. J.—This is a suit to collect a promissory note and to foreclose a chattel mortgage securing the same. From a judgment in favor of the defendants, the plaintiff appeals.

The facts are not in dispute and may be stated as follows: On April 7, 1938, the defendant, Ola E. Hagans, gave A. Standish a promissory note for $1800, payable one year after date, and a chattel mortgage securing it also dated April 7, 1938, describing certain fixtures, show cases, soda fountain, etc., located in the drug store of mortgagor at 606 West Van Buren Street, Phoenix, Arizona. It was signed by Ola E. Hagans and named A. Standish as mortgagee and was placed of record in the office of the county recorder of Maricopa County on April 9, 1938. Thereafter the note and mortgage were sold and assigned to the plaintiff and no part of the indebtedness being paid, the plaintiff asked for judgment against Ola E. Hagans for $1800, with interest at 6% from April 7, 1938, and for foreclosure of the mortgage.

Appellees W. C. Williams, J. D. Williams, C. R. Williams and Alpha E. Rudd, by J. H. Williams their

attorney-in-fact, were made parties because they claimed title to the property described in the mortgage for this reason: The lot on which the drug store was located and in which the mortgaged property was situated, had been leased by appellees Williams to Ola E. Hagans, who had purchased the mortgaged property from Elnora Shupe on a conditional sales contract. The property was on the premises of appellees at the time it was purchased by Mrs. Hagans and, as part of the purchase price, she had assumed and agreed to pay $492 back rent owing by a man named Brown, who had occupied the leased premises prior to the Hagens lease. To pay this back rent, Mrs. Hagans had given appellees a note signed by herself and A. Standish in the sum of $397.30.

Subsequent to the execution and delivery of the note and mortgage to Standish, appellees brought an action on the note for $397.30 and for a month's rent claimed to be owing to them by Mrs. Hagans. When this action was filed, an affidavit of attachment in the usual form was signed by J. H. Williams and a writ of attachment was issued under which the sheriff took into his possession the stock of goods of the drug store run by Mrs. Hagans and the property described in the mortgage sought to be foreclosed. A judgment was entered in this action in favor of J. H. Williams, the plaintiff in the action, and against Mrs. Hagans, the attachment lien was foreclosed, the property attached was sold by the sheriff, and purchased at the sale by J. H. Williams for $350.

In the amended answer several defenses are set up, the first and principal one being a prior and superior lien to that of the mortgage by way of a landlord's lien which appellees claim was foreclosed through the action brought by them against Mrs. Hagans in which the property described in the mortgage was attached and the attachment lien foreclosed. It is the view of

appellant, however, and he contends most strenuously, that when the affidavit of attachment was signed by J. H. Williams and a writ of attachment issued under which the sheriff took into his possession the goods, it was an abandonment by him of his landlord's lien and a waiver of any right to claim thereunder. So the question under this assignment is whether a landlord waives a right to his lien by causing a writ of attachment to issue against the property of the tenant under which the property is sold by that officer.

Two sections of the statute, 27–1215 and 71–306, Code of 1939, give the landlord a lien on the goods of a tenant placed upon the leased premises and provide for the enforcement of the lien by the seizure or taking into possession of the landlord the personal property of the tenant found on the leased premises. Instead, however, of taking possession of the property themselves, Williams secured a writ of attachment under which the sheriff was directed to, and did, take into his possession the property against which they claimed a landlord's lien and by the writ the sheriff was required to keep the property in his hands and hold it subject to the further order of the court unless it was replevied. The property remained in the sheriff's possession until it was sold, pursuant to an execution and at the sale appellees purchased the property.

When appellees had the writ of attachment issued, J. H. Williams swore in the affidavit of attachment that Ola E. Hagans was indebted to appellees on a contract for the direct payment of money and that the payment of the same had not been fully secured by a mortgage, lien or pledge.

The appellant claims that when these steps were taken by the appellees in connection with the mortgaged property, they waived and abandoned any land-

lord's lien they may have had against the property because everything they did was contrary to what the statute required of them if they were enforcing their landlord's lien.

■ This is in accord with a statement of the law found in 24 Cyc. 1248 wherein it is said that a landlord waives his lien by levying an attachment on the property subject to such lien, and in *Wingard* v. *Banning,* 39 Cal. 543, the same principle is announced. We have, however, found difficulty in applying this statement to the facts of this case. Under the law a landlord's lien attaches at the beginning of a tenancy and exists independently of the institution of any proceeding. *Murphey* v. *Brown,* 12 Ariz. 268, 100 Pac. 801, 803. In that case it is said:

" . . . The conclusion seems inevitable that the lien attaches for the entire [period] of the lease on all property of the tenant, placed upon or used on the leased premises, and subsists until all rent for the term has been paid. . . . "

And in the case of *Gila Water Co.* v. *International Finance Corporation,* 9 Cir., 13 Fed. (2d) 1, 2, is found this language:

"We agree with the court below that the lien thus given is superior to any lien created by the tenant."

In *Scottsdale Ginning Co.* v. *Longan,* 24 Ariz. 356, 209 Pac. 876, 878, the rights of a landlord to a lien and how it may be enforced is discussed and among other things it is held as follows:

"In any determination of the remedies given by law to the landlord to enforce the lien on the crops, it is to be borne in mind that the statute is a remedial one, and must be construed so liberally as to effectuate its palpable purpose, and that the purpose of the statute was manifestly to afford the landlord protection commensurate with the obligation assumed by his tenant."

In the comparatively recent case of *Stephens* v. *Cox*, 255 S. W. 241, 242, the Texas Court of Civil Appeals went into the matter very thoroughly whether a landlord waived his lien by issuing a writ of attachment and it came to the conclusion that he did not, stating, among other things, as follows:

" . . . It is stated in 24 Cyc. 1248, that a landlord waives his lien by levying an attachment upon property subject to such lien. The only case there cited in support of this proposition is *Potter* v. *Greenleaf*, 21 R. I. 483, 44 Atl. 718, which sustains the text. The Rhode Island case cites, in support of the doctrine there announced (citing six cases). All of these [cases], except the California case, (*Wingard* v. *Banning*, 39 Cal. 543) hold that a mortgagee, by causing a writ of attachment to be levied upon the mortgaged property, thereby waives his mortgage lien. These cases hold that the remedy of attachment is inconsistent with the foreclosure of a mortgage lien, and that, when a party has one of two inconsistent remedies, by pursuing the one he thereby abandons the other. These cases rest upon the doctrine that a mortgagee of personal property has the right, upon the maturity of his debt, to seize and hold such property.

"No such right exists under the laws of this state. Here a mortgage, though in form a conveyance, conveys no title, but is only a security for debt. Here the levying of an attachment on mortgaged property, and thereby surrendering possession to the officer of the law, would not be to abandon his right of possession, as was held in the cases cited, for he would have no such right of possession. . . . The California case above referred to rests upon the ground that the lien of a common carrier depends upon continued possession, and the levy of an attachment was the voluntary surrender of such possession to the officer levying such attachment, and that this constituted a waiver of the carrier's lien.

"In the instant case, had appellee sued out a distress warrant, instead of an attachment, there could

be no question as to the correctness of the judgment foreclosing his landlord's lien. The landlord's lien is given by law, and does not depend upon the issuance and levy of a distress warrant. *Brown* v. *Collins,* 77 Tex. 159, 14 S. W. 173. The only office of a distress warrant is to impound the property during the pendency of the suit. The attachment served that purpose. The property was on the rented premises when this suit was filed. Appellee prayed for foreclosure of his landlord's lien. The property was subject to such lien. It was in the hands of the officer when judgment herein was rendered, and in no different condition to what it would have been, had the same been seized under a distress warrant. . . . Justice has been done, and we do not think the judgment should be reversed because the attachment was levied; the appellant having suffered no injury thereby.''

On rehearing it was said in this case (256 S. W. 643, 644) by a justice other than the one who wrote the original opinion:

'' . . . It is true that his remedy should have been by distress warrant, yet the Supreme Court has held that his lien exists by force of the statutes, and not by the levy of process which the law permits to be used to enforce it. We think, therefore, that the landlord's lien in this case, subsisted independent of the process through which he sought to enforce it, and that he did not waive it by causing an attachment to issue, instead of a distress warrant; . . . .''

In *Blackwood* v. *Farmers Bank & Trust Co. et al.,* 200 Ark. 738, 141 S. W. (2d) 1, 7, the Supreme Court of Arkansas said:

'' 'A landlord's statutory lien is a paramount lien of which every person must take notice, and can be lost as a general rule only by waiver or by failure to enforce it at the proper time. A landlord's lien is not lost by the form of execution in which he seeks to enforce it, and a refusal of the county court to recognize a landlord's lien will not defeat the lien. A landlord's lien for supplies is not lost by failure to

enforce it in the manner prescribed for the enforcement of a lien for rent. A landlord's lien is not displaced by an assignment of the tenant's property for the payment of debts, and it is not destroyed by the fact that, at the time of issuing his attachment, the goods were in the custody of the law or by the conversion of the property into money by a receiver appointed by the court.' 36 C. J. 525.''

■ We are of the view, therefore, that the appellees did not waive their landlords' lien by causing the attachment to be issued and the goods held under it by the sheriff. They were impounded and held for their benefit.

■ The next proposition raised by appellant is that unless a conditional sales contract provides otherwise, the buyer, under it, may mortgage the goods described in the contract, even though he has not fully performed the condition and such mortgage, if otherwise valid, is binding as against a third person. The section of the statute dealing with this question is 52–610 of the 1939 Code. It provides as follows:

*"Prohibition of removal or sale without notice.*— Unless the contract otherwise provides, the buyer may, without the consent of the seller, remove the goods from any filing district and sell, mortgage or otherwise dispose of his interest in them; but prior to the performance of the condition, no such buyer shall remove the goods from a filing district in which the contract or a copy thereof is filed, except for temporary uses for a period of not more than thirty (30) days, unless the buyer not less than ten (10) days before such removal shall give the seller written notice of the place to which the goods are to be removed and the approximate time of such intended removal; nor prior to the performance of the condition shall the buyer sell, mortgage or otherwise dispose of his interest in the goods, unless he, or the person to whom he is about to sell, mortgage or otherwise dispose of the same, shall give the seller ten (10) days

written notice of the name and address of the person to whom his interest in the goods is about to be sold, mortgaged or transferred. If the buyer does so remove the goods, or does so sell, mortgage or dispose of his interest in them without such notice or in violation of the contract, the seller may retake possession of the goods and deal with them as in a default in payment of the purchase price. The provisions of this section regarding the removal of goods shall not apply, however, to the goods described in the fifth section (§ 52–605) of this chapter (article).''

It would seem to be plain from this section that one who has bought goods under a conditional sales contract and has not paid for them in full, even though the contract does not forbid the mortgaging of the goods, shall, prior to the performance of the condition, give the seller who has not been paid ten days' written notice of the name and address of the person to whom his interest in the goods is about to be mortgaged. This condition had not been fully performed when the mortgage was given Standish and the record is entirely silent of any notice, either oral or written, given Mrs. Shupe by either Mrs. Hagans, the purchaser under the conditional sales contract, or Mr. Standish, the person to whom she was about to, and did, mortgage the property. In the absence of such a showing, we think it clear that she was not authorized to mortgage it. This provision was inserted for the benefit of the one holding the title to the property under the conditional sales contract and gives him an opportunity to protect himself. We think it clear under this statute that inasmuch as neither Mrs. Hagans nor Mr. Standish gave notice to Mrs. Shupe of the contemplated mortgage, that Mrs. Hagans acted without authority in mortgaging it.

This renders a discussion of the last proposition unnecessary.

The judgment is affirmed.

ROSS and STANFORD, JJ., concur.