546 P.2d 11

**UNITED STATES of America (TREASURY DEPARTMENT, INTERNAL REVENUE SERVICE), Appellant,**

v.

**GLOBE CORPORATION, an Illinois Corporation, Appellee.**

**No. 11726.**

Supreme Court of Arizona, En Banc.

Feb. 5, 1976.

**46**

---

William C. Smitherman, U.S. Atty., by James P. Loss, Asst. U.S. Atty, Phoenix, Scott P. Crampton, Meyer Rothwacks, Elmer J. Kelsey, William M. Brown, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant.

Fennemore, Craig, von Ammon & Udall, by Francis J. Slavin, Jr., Phoenix, for appellee.

STRUCKMEYER, Vice Chief Justice.

The Valley Gin Company, as plaintiff in the Superior Court, commenced this action to determine the proper party to receive $15,694.10, the balance of the proceeds from crops grown on land leased by the Globe Corporation to Lee Wong Farms, Inc. The Superior Court, after authorizing the deposit of the fund with the court, awarded the Valley Gin Company $635.40 as costs and attorneys' fees from the fund and ordered that the Valley Gin Company be dismissed from the action. Both the United States and the Globe Corporation were named defendants. Both filed motions for summary judgment. The court below denied the motion of the United States and granted the motion of the Globe Corporation. The United States has appealed. The judgment is set aside and this cause is remanded with directions.

The facts are not in dispute. Lee Wong Farms, Inc. leased certain lands from the Globe Corporation. The lease, dated December 29, 1966, was for four years and provided for an annual rental of $45,000 payable in equal installments on January 1 and August 1 of each year. Pursuant to the lease, Lee Wong Farms, Inc. was in possession of the demised property in April of 1970, at which time it planted a cotton crop scheduled for harvest in late 1970. The cost of planting and growing the crop was advanced by the Valley Gin Company. In the summer of 1970, Lee Wong Farms, Inc. encountered financial difficulty and was unable to meet its obligations. Consequently, the Valley Gin Company took over the harvesting and processing of the crop and satisfied its claim from the proceeds. The balance was interpleaded with the result as stated.

The United States claimed the fund by reason of certain tax liens filed during June and July of 1970. Globe claimed the fund because Lee Wong Farms, Inc. failed to make the rental payment due August 1, 1970. Globe has asserted both a statutory and a contractual landlord's lien on the fund, either of which it claims is entitled to priority over the federal tax liens. The United States on appeal contends that the statutory landlord's lien was inchoate (was not a perfected security interest) at the time the federal tax liens were filed, that the contractual landlord's lien did not constitute a properly protected security interest under the Uniform Commercial Code, and that neither the statutory landlord's lien nor the contractual landlord's lien is entitled to priority over the federal tax liens. The United States also contends that since its liens are entitled to priority, the trial court erred in awarding Valley Gin Company costs and attorneys' fees.

By the United States Internal Revenue Code, § 6321, there is created a lien in favor of the United States upon all property and rights to property belonging to any person who neglects or refuses to pay his tax liability after demand. The lien arises at the time the assessment is made and continues until the liability for the assessed amount is satisfied or becomes unenforceable by reason of lapse of time. Internal Revenue Code, § 6322. The liens asserted by the United States are based on taxes as-

sessed during May and June of 1970 and recorded pursuant to the authority of § 6323 during June and July of 1970.

Globe asserts a statutory lien by reason of A.R.S. § 33–362(C), reading:

"C. The landlord shall have a lien for rent upon crops grown or growing upon the leased premises, * * * and the lien shall continue for a period of six months after expiration of the term of the lease."

As stated, the United States' position is that Globe's lien was not a perfected security interest and therefore it was not entitled to priority over the federal liens.

■■■ Under Arizona law, a landlord has a lien for rent upon crops grown or growing on the leased premises until the rent is paid, A.R.S. § 33–362(C), supra, and the lien attaches at the beginning of the tenancy. *In re Menzies*, 60 F.2d 1064 (D.C.Ariz.1932); *Dewar v. Hagans*, 61 Ariz. 201, 146 P.2d 208, 151 A.L.R. 673 (1944). The lien is for rent due or to become due, *Murphey v. Brown*, 12 Ariz. 268, 100 P. 801 (1909). The landlord acquires a fixed, specific lien in the amount of the rent due on his tenant's goods and property rather than a mere claim for priority of payment. *In re Menzies*, supra. The lien exists independent of any proceedings. *Dewar v. Hagans*, supra.

■■■ While agreeing that the Arizona law is as stated, the United States urges that merely because the landlord's lien attaches at the beginning of the tenancy does not mean that it is so perfected as to have priority over the federal tax lien. As to this, a lien may be classsified by the state as choate (specific and perfected) so as to defeat other state liens, but whether it is sufficient to defeat a federal tax lien is a question of federal law. *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. Scovil*, 348 U.S. 218, 75 S.Ct 244, 99 L.Ed. 271 (1955); *United States v. City of New Britain, Conn.*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954);

*Kuffel v. United States*, 103 Ariz. 321, 441 P.2d 771 (1968).

■■■ To have priority over a federal tax lien, a state lien must be choate under federal law. *United States v. State of Vermont*, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); *T. H. Rogers Lumber Company v. Apel*, 468 F.2d 14 (10th Cir. 1972). To be choate under federal law, the identity of the lienor, the identity of the property subject to the lien and the amount of the lien must be certain. *United States v. City of New Britain, Conn.*, supra.

Globe's position is that the choate doctrine is no longer applicable because the Federal Tax Lien Act of 1966 was adopted subsequent to the cited cases and that it set new standards for determining when a state lien prevails over a federal tax lien. It is argued that Globe's statutory lien qualifies for priority under the Federal Tax Lien Act of 1966 for either of two reasons. First, because Globe qualifies as a holder of a "security interest" under the Internal Revenue Code §§ 6323(a) and 6323(h)(1).

Section 6323(a) provides that:

"[t]he lien imposed by section 6321 shall not be valid as against any * * * holder of a security interest * * * until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate."

Section 6323(h)(1) defines a "security interest" as:

"any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the ex-

tent that, at such time, the holder has parted with money or money's worth."

However, while Globe's statutory landlord's lien arises out of the landlord-tenant relationship, the lien is not within the meaning of § 6323(a).

The purpose of the Federal Tax Lien Act was to conform the internal revenue laws with the developments in the Uniform Commercial Code, Senate Report No. 1708, House Report No. 1884, 89th Congress, 2d Session (1966). The security interest referred to in the tax act must therefore be read in conjunction with the Uniform Commercial Code.

Article nine of the Uniform Commercial Code does not apply to this statutory lien. A.R.S. § 44–3102(B). A lien which is not protected as a security interest by the Uniform Commercial Code is not a security interest within the meaning of § 6323(a) of the Federal Tax Lien Act. *United States v. Sterling National Bank & T. Co. of N. Y.*, 360 F.Supp. 917 (S.D.N.Y. 1973), aff'd in part, rev'd in part on other grounds, 494 F.2d 919 (2d Cir. 1974). *See* also Plumb, Federal Liens and Priorities, 77 Yale L.J. 605, 680–682 (1968). Because Globe's statutory lien was not protected as a security interest under the Uniform Commercial Code, it is not entitled to priority under § 6323(a) of the Federal Act.

Globe also contends that its statutory lien qualifies for a priority status under the provisions of § 6323(c).

Section 6323(c)(1) reads:

"To the extent provided in this subsection, even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which—

(A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting—

(i) a commercial transactions financing agreement,

(ii) a real property construction or improvement financing agreement, or

(iii) an obligatory disbursement agreement, and

(B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation."

Section 6323(c)(3)(A) defines a "real property construction or improvement financing agreement" as:

"an agreement to make cash disbursements to finance—

(i) the construction or improvement of real property,

(ii) a contract to construct or improve real property,

or

(iii) *the raising or harvesting of a farm crop* or the raising of livestock or other animals.

For purposes of clause (iii), the furnishing of goods and services shall be treated as the disbursement of cash." (Emphasis supplied)

Globe contends that it meets the requirements of § 6323(c)(1) since it had entered into a written agreement of lease before the government's lien was filed, which agreement required it to furnish to Lee Wong Farms the lands upon which it raised and harvested a farm crop. Globe construes the word "goods" as including farm lands and so concludes it is entitled to priority status. But we think such a construction is contrary to the meaning of the word "goods" as personal property. Words must be accorded their obvious and natural meaning. *Mendelsohn v. Superior Court*, 76 Ariz. 163, 261 P.2d 983 (1953).

There are, however, other reasons for denying Globe priority status. The disbursements covered in § 6323(c)(3) were discussed in Senate Report No. 1708, supra. The types of financing agreements covered:

"are generally those involving disbursements to an owner of a property for the

construction or improvement of real property, or to a builder for a contract to construct or improve real property, as well as disbursements for the raising or harvesting of farm crops or the raising of livestock or other animals. Protection is limited to interests arising from cash disbursements by the lender except in the case of the financing of a farm crop, livestock, or other animals, where the disbursement may also be in the form of the supplying of goods or services." Senate Report No. 1708, supra page 8, U.S.Code Cong. & Admin.News 1966, pp. 3722, 3729.

The House also refers to the types of disbursements covered:

"a person financing a farm crop is protected to the extent of the value of the seed he furnishes to the farmer to plant a wheat crop and the value of the use of a combine to harvest that crop, as well as cash disbursements he makes to provide funds to pay farm laborers needed to plant and harvest the crop." House Report No. 1884, supra, page 43.

There is no indication whatsoever that the rent for farm lands is included within the coverage.

Furthermore, the term "qualified property" includes only:

"in the case of subparagraph (A) (iii), property subject to the lien imposed by section 6321 at the time of tax lien filing and the crop or the livestock or other animals referred to in subparagraph (A) (iii)." Internal Revenue Code § 6323(c)(3)(B)(iii).

Globe's farm lands are not subject to the lien created by § 6321 and are not entitled to priority over the federal tax liens under Internal Revenue Code § 6323(c).

 Since the Federal Tax Lien Act does not give Globe's lien a priority, this case must be determined by the principle first in time, first in right. *United States v. City of New Britain, Conn.,* supra. The priority of the liens depends on the time they became specific and perfected. In

House Report No. 1884, cited supra, at page 35, the choate doctrine as expressed in *United States v. City of New Britain, Conn.,* supra, is specifically retained in the new § 6323(a); that is, the state lienor is protected if at the time notice of the tax lien is filed the identity of the lienor, the property subject to the lien, and the amount of the lien are all established. Several federal cases have applied the choate doctrine since 1966. *See,* e.g., *Texas Oil & Gas Corporation v. United States,* 466 F.2d 1040 (5th Cir.1972); *T. H. Rogers Lumber Company v. Apel,* supra. The choate doctrine is still viable and must be met by a lienor in order to prevail over a federal tax lien.

 Globe's statutory lien does not meet the choate principle. The amount of Globe's lien was not certain and specific within the meaning of the applicable federal law. True, Globe's lien related back to the date of the making of the lease, the beginning of the tenancy, and was good for all State purposes. Still, under federal law, its lien was inchoate in June and July when the federal tax lien was filed.

"It is clear that Lawler's lien for rent cannot be paid out of the fund interpleaded before the Government's tax lien. Section 6321 does not confer a priority on the lien it creates, but the lien created by its language did attach to all of Walker's property, pursuant to § 6322, when the assessment was made on August 31, 1956. While under Virginia law Lawler has a specific and not merely inchoate lien, which relates back to July 1, 1949, the beginning of the tenancy, and good for all state purposes, under federal law his lien was inchoate at the time the federal tax lien arose and was duly recorded on October 26, 1956, in the proper offices. At the time the federal tax lien attached to Walker's property, he was not in default in the payment of rent, and the distress warrant and writ of attachment were not issued until several months thereafter. Lawler's lien had not been perfected in a federal sense

when the federal tax lien came into existence. His lien was only 'a *caveat* of a more perfect lien to come.'" *United States v. Lawler*, 201 Va. 686, 112 S.E.2d 921 at 926 (1960).

And *see United States v. Waddill, Holland & Flinn*, 323 U.S. 353, 65 S.Ct. 304, 89 L. Ed. 294 (1945).

 Globe also argues that it has a contractual landlord's lien which constitutes a protected security interest and, therefore, it has priority over the federal tax liens. The United States agrees that if Globe had properly recorded its interest in the leased premises it would have had priority over the federal liens, but because Globe only recorded its lease under the index for leases in the Maricopa County Recorder's Office, and not under the index for secured transactions, the lease was not properly recorded as a security interest. Globe replies that it was not required to record its security agreement in order to obtain a priority because A.R.S. § 44–3104(2) excludes landlord's liens from the filing requirements of the Uniform Commercial Code. We, however, are of the opinion that *contractual* landlord's liens are not excluded from the filing requirements of the Uniform Commercial Code.

The principal test as to whether a transaction falls within Article 9 of the Uniform Commercial Code is whether the transaction was intended to have effect as security. Official Comment 1 to U.C.C. § 9–102 (A.R.S. § 44–3102). Excluded are security interests that arise by statute or common law and not by the consent of the parties. Those cases which have considered the landlord's lien exclusion have concluded that landlord's liens arising out of contract are not excluded from the filing requirements. *See In re Leckie Freeburn Coal Company*, 405 F.2d 1043 (6th Cir. 1969); *In re King Furniture City, Inc.*, 240 F.Supp. 453 (E.D.Ark.1965); *Universal C.I.T. Credit Corp. v. Congressional Motors*, 246 Md. 380, 228 A.2d 463 (1967); *Dunham's Music House, Inc. v. Asheville*

*Theatres, Inc.,* 10 N.C.App. 242, 178 S.E.2d 124 (1970). The reasoning of these cases is persuasive. While statutory liens and liens arising from operation of law are excluded from filing by A.R.S. § 44–3104(2), a lien granted a lessor by contract is not excluded by the Uniform Commercial Code. Since the Code's filing requirements apply, Globe's contractual landlord's lien must have been properly filed to have priority.

Arizona enacted the Uniform Commercial Code, A.R.S. § 44–2201, et seq., effective January 1, 1968. Pursuant to the Code, A.R.S. § 44–3123, a financing statement must be filed to perfect all security interests with certain exceptions not here applicable. A.R.S. § 44–3140(A)(1) provided at the time Globe filed its lease that:

"The proper place to file in order to perfect a security interest is as follows:

1. When the collateral is * * * farm products * * * then in the office of the county recorder in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the county recorder in the county where the goods are kept, and in addition when the collateral is crops in the office of the county recorder in the county where the land on which the crops are growing or to be grown is located." Laws 1967, Ch. 3, § 5.

Since both the debtor's residence and the county in which the land is located was Maricopa County, the financing statement had to be filed in the Maricopa County Recorder's Office. Globe filed its lease with the Maricopa County Recorder on February 6, 1970.

A.R.S. § 44–3141(A) provided at the time Globe filed its lease that:

"A financing statement is sufficient if it is signed by the debtor and the secured party, designates by typing or printing the names and mailing addresses of both the debtor and the secured party and contains a statement indicating the types,

or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown, or timber to be cut, or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned. *A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.*" Laws 1967, Ch. 3, § 5. (Emphasis supplied) Unfortunately, the lease is not a part of the record before this Court and, therefore, we are unable to determine whether the lease was sufficient as a financing statement within the meaning of § 44–3141(A).

A.R.S. § 11–462, as it read at the time Globe filed its lease, provided for an index of leases, but not for an index of secured transactions. We also find nothing in the record before us to establish that the Maricopa County Recorder's Office kept an index of secured transactions in February of 1970, when Globe filed its lease. Accordingly, we cannot say whether, as the United States argues, Globe's lease was improperly filed under leases. This case must, therefore, be set aside and remanded to the Superior Court.

■ If it is determined that Globe's lease was sufficient as a financing statement, the Superior Court must then determine whether the Maricopa County Recorder's Office had established an index for the filing of financing statements under the Uniform Commercial Code at the time Globe filed its lease. If there was an index for financing statements and Globe did not direct that its lease be filed as a financing statement, the court below shall enter judgment in favor of the United States, for we consider the law is correctly set forth in *In re Leckie Freeburn Coal Company,* supra at 1046,

"When dealing with a multi-purpose document, it is incumbent upon the filing party to disclose to the Clerk the purpose for recording. In the present case the record does not show that Appellants had directed the Clerk to record the lease as a financing statement when they paid the filing fee. * * *

* * * To allow constructve [sic] notice in this case would defeat the purposes of the recording statutes. One object of filing a financial statement is to insure a bona fide purchaser that his title will not be encumbered. For the Court to hold that the filing of this instrument as a lease provided constructive notice to those searching the records for a financing statement would be wholly illogical."

■ Finally, the United States questions the right of the trial court to award Valley Gin Company costs and attorneys' fees out of the fund. As stated, Valley Gin Company was dismissed from the action by the trial court after it was ordered to deposit the crop proceeds with the Clerk of the Superior Court, less costs and attorneys' fees. The United States did not object to the order allowing costs and attorneys' fees and has not named the Valley Gin Company as an appellee in this appeal. Claimed errors which are not called to the attention of the lower court will not be considered on appeal. *City of Tucson v. Wondergem,* 105 Ariz. 429, 466 P.2d 383 (1970); *Milam v. Milam,* 101 Ariz. 323, 419 P.2d 502 (1966). Since the United States did not object to the award of costs and attorneys' fees in the court below, the asserted error will not be considered in this Court.

It is ordered that the judgment herein is set aside and this cause is remanded with directions.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concurring.