NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHELSEA R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, H.R., *Appellees*.

No. 1 CA-JV 19-0336
FILED 08-27-2020

Appeal from the Superior Court in Yavapai County
No. V1300JD201880002
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown, Judge D. Steven Williams, and Judge James B. Morse Jr.[1] delivered the decision of the Court.

---

**PER CURIAM**:

**¶1**        Chelsea R. (Mother) appeals the juvenile court's order terminating her parental rights to H.R. (Child), arguing the Department of Child Safety (DCS) failed to prove the statutory grounds for severance by clear and convincing evidence, and failed to prove by a preponderance of the evidence that termination served Child's best interests.   For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        In October 2018, DCS received a report that Mother admitted she used marijuana regularly while pregnant with Child, tested positive for marijuana at Child's birth, and did not have a stable place to take Child when she was discharged from the hospital.[2]   Child's eleven-month-old half-sister had already been placed in DCS's care after Mother had begun acting erratically and attempted suicide in December 2017.

**¶3**        In the course of the half-sister's dependency, Mother was diagnosed as severely mentally ill with post-traumatic stress disorder (PTSD), major depressive disorder, generalized anxiety, bipolar disorder, and unspecified personality disorder with borderline features — conditions that put a child in Mother's care at risk of serious injury.  A psychologist had also determined that Mother's prognosis to become a minimally

---

[1]     Judge James B. Morse Jr. replaces the Honorable Kenton D. Jones, who was originally assigned to this panel.  Judge Morse has read the briefs and reviewed the record.

[2]     We view the evidence in the light most favorable to upholding the juvenile court's order terminating parental rights.  *Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 422, ¶ 27 (App. 2011) (citing *Maricopa Cty. Juv. Action No. JD-5312*, 178 Ariz. 372, 376 (App. 1994)).

adequate parent was poor given her cognitive delays, lack of support system, education, employment, and resistance to treatment.

¶4            DCS removed Child from Mother's care and filed a petition alleging Child was dependent as to Mother on the grounds of neglect, substance abuse, and unresolved mental-health issues.[3]  Mother did not contest the allegations, and the juvenile court adjudicated Child dependent in December 2018 and adopted a case plan of family reunification. Meanwhile, Mother was referred for supervised visitation, individual and family counselling, parent-support services, parent-aide services, parenting classes, family treatment court, and another psychological evaluation.

¶5            At a January 2019 psychological evaluation, Mother reported a lengthy and ongoing history of physical, emotional, sexual, and domestic abuse perpetrated by friends and family members that had resulted in psychiatric hospitalization "too many times to count."  Nonetheless, Mother discontinued treatment.  The psychologist diagnosed Mother with PTSD, moderate cannabis-use disorder, and an unspecified intellectual disability.  The psychologist described Mother's PTSD as "progressively worsening" and described "a degree of learned helplessness" resulting from Mother's continuous exposure to trauma that negatively affected her social and cognitive functioning, impulse control, decision-making ability, and emotional well-being.  The combination of these factors rendered Mother unable to function as a parent or function optimally as an individual.  Additionally, clinical testing placed Mother at a high risk for demonstrating dysfunctional parenting and perpetrating child abuse.  The psychologist believed that, "[c]onsidering her years of untreated depression and trauma and the dysfunctional survival skills she has developed over the years," the mental conditions rendering Mother unable to parent would likely continue for a prolonged, indeterminate period.  He described her need for mental-health services as "dire" and recommended she be psychiatrically evaluated for pharmacological treatment and engage in counseling and substance abuse treatment.  Nonetheless, her prognosis was "guarded to poor."

¶6            Despite her history and diagnoses, Mother did not identify her mental health as a cause for concern.  She was only "minimally engaged" in the case plan and participated in services sporadically.  For example, Mother did not complete a six-week parenting class until the week

---

[3]        DCS also alleged Child was dependent as to her father.  His parental rights were terminated in October 2019.  He did not challenge that order and is not a party to this appeal.

before the termination hearing. She missed visits with Child "quite a bit," and, when she did attend, was unable to feed or soothe Child without assistance. Mother struggled to mix a bottle for Child and suggested giving Child "nighttime" medication to induce sleep. She also had to be reminded not to smoke around Child, who suffered from asthma and allergies.

¶7 Despite Mother's resistance to services, the DCS case specialist maintained weekly or biweekly contact with Mother to ensure she knew what steps were necessary to engage with services and had the necessary contact information and transportation. Still, Mother denied that she could benefit from further mental-health services, declined medication management, and refused or failed to attend the recommended psychiatric services and substance-abuse assessment. She chose to use marijuana to treat her mental health but did not engage in substance-abuse testing consistently, participating in only twenty of forty-seven scheduled urinalysis tests.

¶8 In February 2019, DCS expressed concern that Mother had a pattern of "engag[ing] in casual relationships with individuals who [we]re not thought to enhance [Mother's] chances of reunification and [we]re individuals about whom the Department would be concerned" and that even a responsible adult in the home would be unable to effectively manage these behaviors. Two months later, Mother began a romantic relationship with Steven and began living with Steven and his mother, Joy, in Joy's home in Cottonwood. Around this same time, Mother reported she was having hallucinations but did not seek medical attention. Soon thereafter, she became pregnant with her third child. Neither Steven nor Joy believed Mother required assistance to parent, and Steven did not have any concerns about Mother's decision to use marijuana while pregnant with his child.

¶9 In May 2019, DCS had not observed behavioral changes suggesting Mother was able to parent Child and moved to change the case plan to severance and adoption. The juvenile court granted DCS's request.

¶10 At the September 2019 termination hearing, the DCS case specialist expressed concern about Mother's ability to independently provide for Child. The evidence indicated Mother had not been meaningfully employed at any time during the dependency, instead working for $50 to $100 per week to "fix up" a trailer for her former foster father — a man whom she had previously accused of sexually assaulting her — in Winslow. Then, "[a]ll the money that [she] ma[d]e" went to purchase marijuana. Mother did not have a working vehicle and relied on Steven, Joy, and her state-sponsored health insurance for transportation.

¶11        Mother acknowledged a history of mental illness but denied her conditions contributed to Child's removal or prevented her from parenting Child.  She described herself as "not fully codependent" and added she was only relying upon Steven and Joy because she was "dealing with the wrong people" and "fell into a deep hole."  Although Mother testified that marijuana had helped her memory and mental health, she claimed she had recently discontinued using it and was relying entirely upon "coping skills" instead.  But Mother's urinalysis test results indicated she continued to use marijuana, now illegally.  The DCS case specialist testified Mother's decision to use marijuana while pregnant with Child, and again in her most recent pregnancy, reflected an unwillingness to put a child's needs above her own.  Mother testified she would do anything for her children, unless she "was sick."

¶12        Finally, DCS presented evidence that Child was adoptable and currently placed with her half-sister in an adoptive home.  Additionally, the placement was going "above and beyond" to meet Child's needs, which included treatment for and management of Child's allergies and asthma, and would provide Child permanency in a safe, stable home.

¶13        After taking the matter under advisement, the juvenile court entered an order finding DCS proved by clear and convincing evidence it had made reasonable efforts to reunify the family but termination of Mother's parental rights to Child was warranted because Mother was unable to discharge parental responsibilities as a result of mental illness.[4] *See* A.R.S. § 8-533(B)(3).[5]  The court also determined severance would serve Child's best interests, and entered an order terminating Mother's parental rights.  Mother timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

---

[4]        The juvenile court also found clear and convincing evidence to warrant termination on the grounds of neglect and substance abuse.  DCS has not addressed Mother's challenge to the sufficiency of the evidence to sustain those findings.  Because we find sufficient evidence supports termination on the ground of mental illness, we need not decide whether DCS's silence constitutes a concession of error.

[5]        Absent material changes from the relevant date, we cite the current version of rules and statutes.

**DISCUSSION**

**¶14**        A parent's rights may be terminated if the juvenile court finds by clear and convincing evidence that DCS made reasonable efforts to provide appropriate reunification services to the parent but "the parent is unable to discharge parental responsibilities because of mental illness . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."  A.R.S. § 8-533(B)(3); *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 177-78, ¶ 12 (App. 2014) (citing *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 32-34 (App. 1999)). The court must also find by a preponderance of the evidence that termination of the parent-child relationship is in the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (citing *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000)).  We will affirm a termination order "unless there is no reasonable evidence to support" the court's factual findings.  *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)).

**I.        Statutory Grounds for Severance.**

**A.        Reasonable Efforts.**

**¶15**        Mother first argues DCS did not make reasonable efforts to reunify her with Child before moving to terminate her parental rights. Generally, we defer to the finding of reasonableness so long as it is supported by substantial evidence.  *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81-82, ¶ 13 (App. 2005) (citations omitted).  However, if a parent does not believe the reunification efforts are appropriate, it is "incumbent on [the parent] to promptly bring those concerns to the attention of the juvenile court, thereby giving that court a reasonable opportunity to address the matter."  *Shawanee S.*, 234 Ariz. at 179, ¶ 18. Thus, "a parent who does not object in the juvenile court is precluded from challenging that finding on appeal."  *Id.* at ¶ 16 (citations omitted).  The rationale for this policy is sound:

> It serves no one to wait to bring such concerns to light for the first time on appeal, when months have passed since the severance order was entered.  Instead, a parent's failure to assert legitimate complaints in the juvenile court about the adequacy of services needlessly injects uncertainty and

potential delay into the proceedings, when important rights and interests are at stake and timeliness is critical.

*Id.* at 178-79, ¶ 16; *see also Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("[A]bsent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal" because "a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error [is] raised on appeal.") (citing *Van Dever v. Sears, Roebuck & Co.*, 129 Ariz. 150, 151-52 (1981), and *United States v. Globe Corp.*, 113 Ariz. 44, 51 (1976)). Such an objection may be raised during any number of proceedings before the juvenile court, including at a dependency hearing, periodic review hearings, the permanency planning hearing, and even the termination hearing. *Shawanee S.*, 234 Ariz. at 178, ¶ 14.

**¶16** Mother argues DCS should have done more to assist her in obtaining appropriate housing and additional mental-health services. But Mother did not challenge the adequacy of DCS's reunification efforts in the juvenile court. To the contrary, at the severance hearing, Mother opposed the termination upon the grounds that she was *already* a minimally adequate parent, ready and able to care for Child. Indeed, when asked, Mother could not identify any services she believed DCS should have but did not offer. On this record, Mother waived the opportunity to challenge the reasonableness of DCS's reunification efforts.

### B. Ability to Parent.

**¶17** Mother also argues insufficient evidence supports the juvenile court's finding that she is unable to discharge her parental responsibilities as a result of her mental illness. Mother argues the evidence establishes she could "safely parent . . . with assistance" from Steven and Joy.

**¶18** But there is no indication that either Steven or Joy was a safe or appropriate caregiver for an infant. Joy has a documented history with DCS, and Steven, childless, has a criminal history and did not find it troublesome that Mother smoked marijuana while pregnant with his biological child. Additionally, neither Steven nor Joy was aware of or had concerns about the status of Mother's mental health.

**¶19** Moreover, Mother testified she had known and been in a relationship with Steven, and living with Steven and Joy in Cottonwood, for only about six months, and had no plan to reside there indefinitely. Instead, Mother planned to relocate with Child to a "move-in ready" trailer she did not own in Winslow, that had a "busted . . . in" door, needed new

flooring, and could not obtain water service until a $281 connection fee was paid. Mother testified she would have one of the two bedrooms in the trailer, and Child another, but expressed no apparent intent to include Steven or Joy in the move. On this record, we cannot say the juvenile court erred in concluding Mother was unable to discharge parental responsibilities.

¶20 Finally, Mother suggests insufficient evidence supports the juvenile court's finding that her mental illness was likely to continue for a prolonged indeterminate period.[6] But this finding is directly supported by the psychologist's report finding it unlikely Mother will be able to parent appropriately until she completes "trauma work to help modify the dysfunctional belief systems and thought patterns" occasioned by "years of untreated depression and trauma." Accordingly, we find no error.

## II. Best Interests.

¶21 Mother argues insufficient evidence supports the juvenile court's determination that Child's best interests would be served through termination. Mother's argument is premised, in part, upon her assertion that the court erred in concluding DCS made reasonable reunification efforts. Because we have concluded Mother waived her right to challenge the adequacy of reunification services, *see supra* ¶ 15, Mother fails to demonstrate error upon this basis.

¶22 Mother alternatively relies upon her assertion that she has established herself as a minimally adequate parent, arguing the best-interests finding reflects a comparison between her safe, stable home and another's, and impermissibly resolves that comparison in favor of a determination that Child would be "better off" elsewhere. Because we have concluded that DCS proved that Mother was not able to provide a safe, stable home as a result of mental illness, *see supra* Part I(B), Mother's claim fails.

¶23 The juvenile court found severance would benefit Child, by allowing for her adoption into a safe, stable, and permanent home. The court noted Child was adoptable and in an adoptive placement with her half-sister, and the placement was meeting Child's needs. These findings are supported by the record and sufficient to support the court's conclusion

---

6       To the extent Mother relies upon the absence of certain services that could have aided in assessing her mental health status, the argument is, again, waived. *See supra* ¶ 15.

that termination of Mother's parental rights would serve Child's best interests. *See, e.g., Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 9 (App. 2017) ("In meeting this burden [to prove termination of parental rights is in a child's best interests], DCS may establish that the child is adoptable and would benefit from an adoptive placement. Additionally, DCS may present evidence showing that an existing placement is meeting the needs of the child.") (citing *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994), and *Mary Lou C.*, 207 Ariz. at 50, ¶ 19). We find no abuse of discretion.

## CONCLUSION

**¶24**      The order terminating Mother's parental rights to Child is affirmed.

