NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SALYNDA H., PAUL T., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.H., M.T., P.T., *Appellees.*

No. 1 CA-JV 19-0234
FILED 3-17-2020

Appeal from the Superior Court in Mohave County
No. B8015JD201804062
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Harris & Winger, P.C., Flagstaff
By Chad Joshua Winger
*Counsel for Appellant Salynda H.*

The Stavris Law Firm, P.L.L.C., Scottsdale
By Alison Stavris
*Counsel for Appellant Paul T.*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

**J O N E S**, Judge:

¶1 Salynda H. (Mother) and Paul T. (Father) appeal from the juvenile court's order terminating their parental rights to C.H., M.T., and P.T. (the Children),[1] arguing the Department of Child Safety (DCS) failed to prove the statutory grounds for severance by clear and convincing evidence and failed to prove by a preponderance of the evidence that termination would serve the Children's best interests. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 In June 2018, DCS received a report that the parents had not sought timely medical care for twelve-year-old C.H. after she attempted suicide.[2] DCS removed C.H. and her eight-month- and three-year-old siblings from Mother's and Father's care after observing the Children "riddled with lice" in a filthy home shared with ten other people and reviewing the parents' extensive history of substance abuse, untreated mental health concerns, and general failure to care for the Children, as documented through prior DCS investigations. DCS then filed a petition alleging the Children were dependent as to both parents on the grounds of neglect, substance abuse, and mental health. Father did not contest the allegations of the petition, and Mother did not appear for the initial dependency hearing. The juvenile court adjudicated the Children dependent as to both parents in July and August 2018.

---

[1]     Father is not the biological parent of C.H. C.H.'s father is not a party to this appeal.

[2]     We view the evidence in the light most favorable to upholding the juvenile court's order terminating parental rights. *Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 422, ¶ 27 (App. 2011) (citing *Maricopa Cty. Juv. Action No. JD-5312*, 178 Ariz. 372, 376 (App. 1994)).

¶3            Meanwhile, Mother presented for a mental health assessment "laughing uncontrollably" and "making various erratic statements." The clinician diagnosed Mother with unspecified persistent mood disorder and recommended Mother participate in a nursing assessment, a psychiatric evaluation, medication management, and group counseling. Mother missed a scheduled psychiatric evaluation in July 2018, and the clinic was unable to contact her to reschedule. DCS later learned the parents had left Arizona rather than engage in services.

¶4            Mother contacted the behavioral health clinic in August 2018 to request medication but did not present for a nursing assessment until October. The clinician documented concerns regarding Mother's mental functioning and the depression, anxiety, and obsessive-compulsive behaviors she reported. It was again recommended that Mother participate in a psychiatric evaluation, as well as psychoeducation and individual and group therapy. DCS was unable to proceed with psychiatric services until Mother established some period of sobriety.

¶5            Father presented for a mental health assessment in September 2018. The clinician diagnosed Father with an unspecified mood disorder and recommended he participate in a nursing assessment, psychiatric evaluation, and group counseling. At a psychological consult in October, the clinician documented concerns regarding Father's aggressive and controlling behavior. He recommended Father be assessed for anti-social personality disorder and potential for future drug abuse and domestic violence relationships.

¶6            Mother and Father began attending a substance abuse course and a parenting class in October 2018. Neither parent engaged in any meaningful way in substance abuse testing, domestic violence counseling, or the recommended mental health services. By November, the parents had changed residences five times, and Mother lacked any legal source of income. Nor had the parents gained any insight into their circumstance or made any behavioral changes suggesting either was prepared to care for the Children. They attended visits unprepared to feed or care for the Children, were verbally abusive to the parent aide, and frequently cancelled or asked to end visits early.

¶7            Despite testing positive for marijuana and methamphetamine in November 2018, Mother and Father denied any history of substance abuse. When presented with evidence that two of the Children had been born substance-exposed and Father had a lengthy drug-related criminal history, Mother blamed faulty drug test results and Father clarified he was

not *currently* abusing substances. They both later admitted actively and regularly using marijuana. Mother also denied a history of mental illness, blaming an undocumented brain aneurysm for her erratic behavior.

**¶8** Noting the parents' lack of consistency, cooperation, and contact with DCS, the juvenile court changed the case plan to severance and adoption in December 2018. DCS immediately moved to terminate Mother's and Father's parental rights to the Children on the grounds of neglect, mental illness, and substance abuse, and to P.T. based upon the length of time in out-of-home care. Meanwhile, C.H. elaborated on the parents' drug activity and reported multiple instances of physical abuse perpetrated by Father against the Children and other relatives. C.H. declined to participate in visits, and visits with M.T. and P.T. were suspended when the Children began acting out physically and emotionally afterward.

**¶9** By the time of trial in May 2019, Mother and Father had completed substance abuse treatment and a parenting class. But the parents had submitted only three or four drug tests in the year that had passed since the Children's removal and recently tested positive for marijuana. Moreover, DCS had been unable to contact them at their most recently reported address, and a potential adoptive placement withdrew her request for consideration after Father threatened her. Additionally, Mother had three active warrants for her arrest relating to criminal charges of disorderly conduct, trespass, and shoplifting.

**¶10** The DCS case manager testified the parents were "going through the motions," but had not made behavioral changes necessary to demonstrate their ability to parent the Children. For example, the parents participated in substance abuse treatment but continued to deny any substance abuse history and continued to abuse substances. Given their lack of insight and lackluster participation, the case manager opined that Mother's and Father's substance abuse was likely to continue for a prolonged indeterminate period.

**¶11** The DCS case manager also testified that termination of Mother's and Father's parental rights would serve the Children's best interests. She testified the Children were adoptable, DCS had identified two relative adoptive placements, and adoption would give the Children an opportunity for permanency, together, in a safe, stable home free from substance abuse and neglect. Additionally, C.H. wished to be adopted into a home where she was not responsible for caring for her younger siblings.

4

¶12        Mother and Father testified regarding their participation in services. Mother self-reported ninety days of sobriety and stated she was ready to parent the Children.

¶13        After taking the matter under advisement, the juvenile court entered an order finding DCS proved by clear and convincing evidence that it had made diligent efforts to reunify the family but termination of both parents' parental rights to the Children was warranted because Mother and Father had neglected the Children and were unable to discharge parental responsibilities because of substance abuse. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(2), (3).[3] The court also found termination of Mother's parental rights to the Children was warranted because she was unable to discharge parental responsibilities because of mental illness, *see* A.R.S. § 8-533(B)(3), and termination of both parents' parental rights to P.T. was warranted because they had substantially neglected or willfully refused to remedy the circumstances causing him to be in out-of-home care for longer than six months, *see* A.R.S. § 8-533(B)(8)(b). The court found that severance of both parents' rights served the Children's best interests, and entered an order terminating Mother's and Father's parental rights. Both parents timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### I.    Statutory Grounds for Severance

¶14        In certain circumstances, the juvenile court must find, by clear and convincing evidence, that DCS made diligent efforts to provide reunification services to parents prior to terminating parental rights.[4] *See, e.g.*, A.R.S. § 8-533(B)(8) (requiring diligent reunification efforts when termination is based upon the child's length of time in out-of-home care); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49, ¶¶ 14-15 (App. 2004) (requiring diligent reunification efforts when termination is based upon the

---

[3]    Absent material changes from the relevant date, we cite the current version of rules and statutes.

[4]    Mother argues the U.S. Constitution requires a diligent-efforts finding before parental rights may be terminated on any of the grounds enumerated within A.R.S. § 8-533(B). Because we find the parents waived their challenge to the juvenile court's finding of diligent efforts, we need not and do not address this broader proposition.

parent's chronic substance abuse). Mother and Father argue insufficient evidence supports the court's diligent-efforts finding here.

¶15 However, if a parent does not believe the reunification efforts are appropriate, it is "incumbent on [the parent] to promptly bring those concerns to the attention of the juvenile court, thereby giving that court a reasonable opportunity to address the matter." *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014). "[A] parent who does not object in the juvenile court is precluded from challenging that finding on appeal." *Id.* at ¶ 16 (citations omitted). The rationale for this rule is sound:

> It serves no one to wait to bring such concerns to light for the first time on appeal, when months have passed since the severance order was entered. Instead, a parent's failure to assert legitimate complaints in the juvenile court about the adequacy of services needlessly injects uncertainty and potential delay into the proceedings, when important rights and interests are at stake and timeliness is critical.

*Id.* at 178-79, ¶ 16; *see also Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("[A]bsent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal" because "a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error [is] raised on appeal.") (citing *Van Dever v. Sears, Roebuck & Co.*, 129 Ariz. 150, 151-52 (1981), and *United States v. Globe Corp.*, 113 Ariz. 44, 51 (1976)). Such an objection may be raised during any number of proceedings before the juvenile court, including at a dependency hearing, periodic review hearings, the permanency planning hearing, and even the termination hearing. *Shawanee S.*, 234 Ariz. at 178, ¶ 14.

¶16 On appeal, Father argues DCS should have done more to locate the parents when they moved out-of-state, and both Mother and Father suggest DCS should have re-referred them for parenting classes and drug testing. But neither parent challenged the adequacy of the services provided by DCS in the juvenile court.[5] Indeed, both Mother and Father testified at trial that they had participated in or were completing those very

---

[5] At the termination hearing, Mother's counsel suggested DCS acted inappropriately when it moved to suspend visitation and failed to request and/or produce records from organizations where Mother and Father claimed to be receiving services. These are not challenges to reunification services, and, regardless, Mother does not re-advance these arguments on appeal.

services; Mother further suggested that additional services were unnecessary because she believed she was already ready and able to parent the Children.

**¶17** On this record, Mother and Father waived the opportunity to challenge the diligence of DCS's reunification efforts by failing to raise the issue in prior proceedings despite ample opportunity to do so. Because neither parent otherwise challenges the juvenile court's findings supporting termination on the grounds of substance abuse under A.R.S. § 8-533(B)(3), the determination that DCS proved at least one of the statutory grounds for severance by clear and convincing evidence is affirmed. *See Crystal E. v. DCS*, 241 Ariz. 576, 577, ¶ 5 (App. 2017) (holding a parent's failure to challenge termination on a specific statutory ground constitutes abandonment and waiver of that issue on appeal) (citations omitted).[6]

## II.     Best Interests

**¶18** Mother and Father argue the juvenile court abused its discretion in finding termination was in the Children's best interests. To establish best interests, it must be shown that a child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004) (citations omitted); *accord Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). The inquiry is a fact-specific, case-by-case determination, in which the court balances "the unfit parent's 'diluted' interest 'against the independent and often adverse interests of the child in a safe and stable home life.'" *Demetrius L.*, 239 Ariz. at 4, ¶¶ 13, 15 (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2005)). We review the best-interests finding for an abuse of discretion and will only reverse if "as a matter of law, no reasonable fact-finder could have found the evidence satisfied the applicable burden of proof." *Titus S. v. DCS*, 244 Ariz. 365, 369, ¶ 15 (App. 2018) (citing *Mary Lou C.*, 207 Ariz. at 47, ¶ 8, and *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94-95, ¶¶ 9-10 (App. 2009)).

---

[6]     Because we find clear and convincing evidence supports the termination order based upon Mother's and Father's substance abuse, we need not and do not consider whether the remaining grounds are supported by the record. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (citing *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000), and *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 242 (App. 1988)).

¶19         Father argues termination was "not the best option," pointing to evidence suggesting he was an appropriate parent. Mother joins the argument. But the juvenile court acknowledged that the parents had participated in some services and secured housing and employment but nonetheless balanced the evidence in favor of the Children's interest in permanency, after finding:

> [The Children] have been in temporary custody for approximately one year. The parents have not been able to care for their children. They don't recognize the [C]hildren's need for structure and safety. They do not appreciate [C.H.]'s need to attend school regularly and, most importantly, they fail to acknowledge her behavioral and emotional needs. The parents still do not acknowledge any of their own problems involving mental illness and substance abuse.
>
> . . .
>
> Termination of parental rights will make the [C]hildren available for adoption so they can benefit from a safe, stable forever home.

¶20         These findings are supported by the record and are sufficient to justify the juvenile court's conclusion that termination was in the Children's best interests. *See Demetrius L.*, 239 Ariz. at 4-5, ¶ 16 ("It is well established in state-initiated cases that the child's prospective adoption is a benefit that can support a best-interests finding.") (citing *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010)); *Kent K.*, 210 Ariz. at 287, ¶ 37 (recognizing "the child's interest in obtaining a loving, stable home, or at the very least avoiding a potentially harmful relationship with a parent, deserves at least as much weight as that accorded the interest of the unfit parent in maintaining parental rights"); *Maricopa Cty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988) (finding the existence of a statutory ground for severance that negatively effects a child to be relevant to the best-interests analysis). On this record, we cannot say the court abused its discretion.

## CONCLUSION

¶21     The juvenile court's order terminating Mother's and Father's parental rights to the Children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA